# Sullivan *v.* Rabb.

*Bill in Equity by Foreign Executors, for Injunction against Trespass on Lands.*

| 86 | 433 | 3 |
| 95 | 240 | |
| 86 | 432 | |
| 99 | 266 | |
| 86 | 432 | |
| 104 | 138 | |

1. *Appointment of executor, under will attested by only one witness.* Although a will is not effectual to pass property, unless attested by two witnesses (Code, § 1966); yet, if admitted to probate in the county in which lands of the estate are situated, and letters testamentary are grant :d to the person therein named as executor, the appointment will not be held void, when collaterally assailed, because there was but one attesting witness to the will, nor because no bond was required of the person so appointed.

2. *When executor or administrator may sue.*—Under the large powers conferred by statute on the personal representatives of decedents, over the lands belonging to the estate, an executor or administrator, appointed by the Probate Court of the county having jurisdiction, having taken possession of the lands, and exercising such acts of ownership and control as their nature and uses admit of, may maintain a bill in equity to prevent trespasses and waste by third persons, without alleging or showing a necessity for the exercise of his statutory powers.

3. *Bankruptcy, operating dissolution of attachment.*—Under the provisions of the Bankrupt Act (U. S. Rev. Statutes, § 5044), as construed by the Supreme Court of the United States, when there has been an adjudication in bankruptcy, an assignee appointed, and a conveyance executed to him by the register, the assignment relates back to the commencement of the proceedings in bankruptcy, and, by operation of law, dissolves any attachment sued out within the four months next preceding their commencement, without any action on the part of the court in which the attachment suit is pending; and these decisions are binding on this court. (*Sims v. Jacobson & Co.*, 51 Ala. 186, overruled.)

4. *Injunction of trespass on lands.*—The jurisdiction of a court of equity to restrain by injunction trespasses on land, in a case of irreparable injury, is well established; and a case of irreparable injury is shown, when the several defendants, claming under a common source of title, are committing depredations on different portions of a large body of lands, cutting and destroying the timber in which the chief value of the lands consists, and are unable to respond in damages at law.

APPEAL from the Chancery Court of Escambia.

Heard before the Hon. JOHN A. FOSTER.

28

[Sullivan v. Rabb.]

The bill in this case was filed on the 22d November, 1886, by Martin H. Sullivan and Mrs. Emily S. Sullivan, as executor and executrix of the last will and testament of Daniel F. Sullivan, deceased, against C. S. Rabb and six other persons; and sought to enjoin and restrain the commission of further trespasses and acts of depredation by the several defendants, on different portions of a large body of lands, of which, as the complainants alleged, their testator was seized and possessed at the time of his death, in June, 1884. The lands had belonged to the Pensacola Lumber Company, and each party claimed title under that corporation; Sullivan, by purchase and conveyance, in 1880, from one Sargent, who had bought at a sale made by the assignee in bankruptcy of said corporation; and Rabb, under whom the other defendants claimed and held, as purchaser at a sale made by the sheriff of Escambia county, in June, 1886, under executions and orders of sale on several judgments rendered by the Circuit Court of said county, in actions against said corporation commenced by attachments, which were levied on said lands. The opinion states fully all the material facts connected with these judicial proceedings. On final hearing, on pleadings and proof, the chancellor dissolved the injunction, and dismissed the bill, basing his decision, as he declared, "principally on the case of *Sims v. Jacobson & Co.*, 51 Ala. 186." The chancellor's decree is now assigned as error.

R. L. CAMPBELL, and J. M. DAVISON, for appellants.—(1.) The validity of the plaintiffs' letters, or their right to sue as executor and executrix, can not be called in question collaterally.—*Leatherwood v. Sullivan*, 81 Ala. 458. (2.) The bill alleges, and the evidence fully establishes, a case of waste followed by irreparable injury, calling for equitable relief by injunction.—*Lyon v. Hunt*, 11 Ala. 295; *Boulo v. Railroad Co.*, 55 Ala. 480. (3.) Sullivan's title to the lands, acquired from the purchaser at a sale made by the assignee in bankruptcy, must prevail over a claim founded on a sale in the attachment suits. The attachments were sued out within four months before the commencement of the proceedings in bankruptcy, and were dissolved by operation of law.—U. S. Rev. Statutes, § 5044; *Conner v. Long*, 104 U. S. 232; *Bank v. Sherman*, 101 U. S. 403; *Chapman v. Brewer*, 114 U. S. 158; *Bracken v. Johnson*, 4 Dill. C. C. 518.

D. C. ANDERSON, and THOS. A. HAMILTON, *contra*.—(1.) An injunction to stay waste is granted only against a person who is in rightful possession, and who is in privity of title with the plaintiff.—5 Vesey, 186, mar.; Kerr on Injunctions, * 238-9; 11 Ala. 305; 2 Story's Equity, § 918; 1 High on Injunctions, § 651, 2d ed., citing 6 Vesey, 51, 784; 1 How. Miss. 108; 1 Vesey, 401, note; 1 Bro. C. C. 57; 3 Mer. 174; 2 Moll. 541; 1 Bland, 576. The remedy has been extended, by more modern decisions, to cases of simple trespass, where irreparable injury is alleged and proved; but, in such cases, the plaintiff's title must be undisputed, or, at least, clearly established.—7 Vesey, 311, note; 8 Vesey, 90; 18 Vesey, 186; 10 Vesey, 159, note; 6 Vesey, 784; 1 Bro. C. C. 57; 1 Irish Eq. 93; 9 Gill & J. 468; 4 Johns. Ch. 21; 2 Madd. Ch. 218, 4th Amer. ed; 2 Dev. & Bat. 379; 19 Vesey, 147, mar.; 3 Jones (N. C.) Eq. 177; 8 Minn. 113; 7 W. Va. 223; 10 W. Va. 250. That this is the doctrine of this court, see *Boulo v. Railroad Co.*, 55 Ala. 480. (2.) Here, the title of the plaintiffs, as well as the title of their testator, is denied and disputed by plea and answer, and it is disproved by the evidence. They sue as executor and executrix of a will, which has been admitted to probate both in Florida, where the testator died, and in Alabama, where the lands in controversy are situated, and they can only recover in that capacity. The will, though attested by only one witness, was properly admitted to probate in Florida, being a valid disposition of the personal property, under the laws of that State as proved. But the will is a nullity under the laws of Alabama, and its probate could confer no rights to lands here situated.—Code, § 1966. That the sufficiency of a will to pass real estate, and the capacity of the testator to make it, are governed by the law of the State in which the lands are situated, see Rorer on Inter-state Law, 266; 4 McL. 75; 18 How. 470; 31 Mo. 166; 22 Me. 300; 12 Vt. 589; 1 Metc. Ky. 49. The complainants, then, have no more title than if the will had never been executed, or had never been admitted to probate; and they must fail for want of proof of title in themselves. (3.) But their testator never acquired any title to the lands, under his purchase from Sargent, which can prevail against a purchaser at sheriff's sale under process in the attachment suits. The State court had rightful jurisdiction, and its jurisdiction was never disturbed. The assignee in bankruptcy might have intervened, and asserted his right to the property; but he was not bound to do so,

[Sullivan v. Rabb.]

and in fact never did. The court could not take judicial notice of the proceedings in bankruptcy; the defendant could only plead his discharge, if obtained before judgment; and the other creditors could only act through the assignee. That the judgment, rendered under these circumstances, is conclusive, and must prevail against the subsequent sale by the assignee, see *Sims v. Jacobson & Co.*, 51 Ala. 190; *Crow v. Reid*, 57 Ala. 181; *Eyster v. Goff*, 91 U. S. 521; *Conner v. Long*, 104 U. S. 234-40; *Doe v. Childress*, 21 Wall. 642; *Peck v. Jenness*, 7 How. 721; *Johnson v. Bishop*, Wool. 324; 10 Peters, 400; 17 How. 471; 3 Wall. 334; 17 Bank. Register, 124; 93 U. S. 134; 44 Geo. 162; 40 Geo. 162; 31 Ind. 468; 22 Wall. 57; 117 U. S. 564.

STONE, C. J.—The present bill was filed for an injunction against six or more persons, to restrain them from cutting, removing and converting timber from a very large body of lands, very many thousand acres. The lands are pine lands, in forest, uncleared and uncultivated. Their chief value is in the pine timber growing on them. There is but one material question of fact, upon which there is any dispute. Complainants claim that their testator, D. F. Sullivan, acquired possession of the lands in 1880, and continued in possession through his agents, tenants and employees, until his death in 1884, and that during this time he exercised acts of ownership, by making expensive improvements on the property for logging purposes; that he had cut and removed from the premises a very large quantity of the timber, claimed the property as his own, and paid taxes on it. During this time, it is not shown that any other person claimed any right or interest in the land, unless the attachment proceedings, after shown, amount to an adverse claim. After the death of D. F. Sullivan, in June, 1884, until the sheriff sold the lands, after stated—two years—it is claimed that Sullivan's executors asserted the same rights, and exercised substantially the same acts of ownership over the property, as their testator had previously done; and that no open adversary claim was asserted during that period. The testimony convinces us, that these claims of appellants—complainants below—are substantially made good; and that up to the taking of the testimony in this cause, the executors asserted the same claim of ownership, the same control, and maintained the same acts of possession, as they had done since the death of their testator.

[Sullivan v. Rabb.]

The claim of defendant Rabb (the others hold under him) rests on his purchase of the lands at sheriff's sale, in June, 1886. Soon after his purchase, he employed agents who looked after the lands, with a view of protecting the timber from trespass and depredation; and the agents thus employed continued in this service until the present bill was filed, November, 1886. Rabb had also contracted with his several co-defendants for the sale to them of the timber standing on several sections of the land, and they had entered, or were about to enter, upon the work of felling and appropriating the timber. The bill charges, and the answer admits, that neither Rabb, nor any of his co-defendants, is able to respond in damages for the timber thus threatened to be taken, should it be found that complainants' claim to the same is valid. The bill also charges, and it is admitted, that Rabb was about to make sales of timber on other portions of the land. The disputed question of fact is, whether complainants have shown they were in possession of the lands when they filed this bill.

The injunction prayed for and obtained restrained Rabb and his co-defendants from cutting and removing the timber. On final hearing, the chancellor dissolved the injunction, and dismissed the bill; and from that ruling the present appeal is prosecuted. Counsel for appellees urge many reasons why the decree of the chancellor should be affirmed.

The present suit is by executors, suing as such, and the subject of the suit is the ownership of lands in Alabama, and waste charged to be threatened, or to have been committed upon them.

D. F. Sullivan died in Florida, of which State he was, at the time, a resident. His will was first admitted to probate in the county and State of his residence, and then in Escambia county in this State, the county in which the lands in controversy lie; and the executors named in the will qualified as such in Alabama. The probate in this State conformed to the provisions of our statute, so far as the mere form of the proceedings is concerned.—Code of 1886, § 1985 (2313).

It is contended for appellees, that the Alabama probate, and the qualification of the executors, are each void, for the following reasons: Wills, to accomplish the purpose attempted in this case, are required by our statute to be "attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator."—Code of

1886, § 1966 (2294). D. F. Sullivan's will shows on its
face, and in the Alabama probate, that it has but one sub-
scribing witness. As an additional reason why we should
declare the will void as to the lands, the Florida statute is
put in evidence, by which it is shown that a will of real
estate, to be valid, must have three or more subscribing wit-
nesses. For these reasons, it is contended that the will is
utterly ineffectual to convey lands in Alabama; that as to
such lands Mr. Sullivan died intestate, and that for that rea-
son alone the executors, as such, have no power or authority
over the real estate in Alabama.

Under our statutory system, the personal representative
is clothed with a very large power over the realty, and,
except in cases where the will vests the title in the executor,
or clothes him with a personal trust, the powers of an admin-
istrator are co-extensive with those of an executor. Whether
the will was ineffective or not to convey lands, Mr. Sul-
livan's residence and death in Florida, leaving property, real
or personal, in Alabama, armed the Probate Court of the
county in which it was situated with jurisdiction to appoint
a personal representative of his estate; and whether in such
appointment he was named executor, when it should have
been administrator, or e converso, was and is merely a ques-
tion of regularity, and did not render the appointment void.
It would stand, unless reversed on direct appeal, or revoked
by the authority which granted it. It could not be de-
clared void on collateral attack.—*Broughton v. Bradley*,
34 Ala. 694; *Leatherwood v. Sullivan*, 81 Ala. 458; *Nicrosi
v. Giuly*, 85 Ala. 365. And the fact that such appointment
is made without bond, does not make it void. In a proper
case, it would be ground for revoking it.—*Ex parte Max-
well*, 37 Ala. 362; *Cunningham v. Thomas*, 59 Ala. 158;
*Leatherwood v. Sullivan*, 81 Ala. 458.

It is contended, in the next place, that the personal rep-
resentatives can not maintain this suit.

Our statutes confer on the personal representatives very
large powers over the realty. They may possess themselves
of it, even against the heir, that they may let it to rent, or
that they may obtain an order and sell it, for the payment
of debts, or for equal distribution.—*Calhoun v. Fletcher*,
63 Ala. 574; *Lee v. Downey*, 68 Ala. 98; *Wells v. Elliott*,
*Ib.* 183; *Lanford v. Dunklin*, 71 Ala. 594; *Watson v.
Prestwood*, 79 Ala. 416; *Leatherwood v. Sullivan*, 81 Ala.
458; *Pendley v. Madison*, 83 Ala. 484; *Nicrosi v. Giuly*,

[Sullivan v. Rabb.]

85 Ala. 365.    Whether the heir could defend against a suit by the personal representative, on the ground that the lands are not needed for any purpose that falls within the purview of the latter's power, we need not inquire.    That is not this case.    It is manifest that no other person can raise that question.    It sufficiently appears in this case, that the executors, soon after they qualified in Alabama, took control of the property in controversy, and asserted such acts of ownership and possession as the nature of the property and its uses were suceptible of.    The present action is rightly brought in their names, if it is otherwise maintainable.

It is contended for appellees, that the title to the property in controversy was and is in Rabb, and, for that reason, the decree of the chancellor should be affirmed.    The chancellor placed his ruling on this ground.

The entire lands involved in this suit were originally the property of the Pensacola Lumber Company, a New York corporation.    Both Sullivan and Rabb trace their title to it.    In February, 1875, several persons, claiming to be creditors of the corporation, sued out attachments against it, and they were levied on the lands.    Those attachments remained without ever having been abated or dissolved, by any action of the court in which they were pending.    Defense was made to the suits, by counsel representing the Pensacola Lumber Company, and the suits continued for some time on the docket of the Circuit Court in which they were instituted.    The assignee in bankruptcy, after noticed, was never made a party to them.    The claims were finally reduced to judgments against the Pensacola Lumber Company, by the Escambia Circuit (State) Court, in which they were pending.    Orders of sale were then issued to the sheriff, commanding him to sell the lands so attached, in satisfaction of the judgments.    The sale was enjoined, for a time, under a bill filed in the Circuit Court of the United States, by persons representing the adversary interest in this case; but it was dismissed, and the injunction dissolved for want of jurisdiction in the court.—*Sargent v. Helton*, 115 U. S. 348.    That decision can exert no influence in the determination of this case.    The lands were sold by the sheriff in June, 1886; Rabb became the purchaser, and received the sheriff's deed.    This is Rabb's chain of title.

In February, 1875, after the levy of the attachment, but in much less than four months after such levy, the Pensacola Lumber Company was adjudicated a bankrupt, in the Dis-

trict Court of the Southern District of New York, the district in which the corporation had its domicil.   One Smith was appointed assignee, and a register of the court assigned and conveyed to him all the property of the bankrupt corporation.   The assignee sold the lands in controversy; Sargent became the purchaser; the sale was confirmed, and a deed made by the assignee to him.   In 1880 Sargent sold and conveyed the lands to D. F. Sullivan.   This is complainants' chain of title.

It is contended for appellees, that the act of Congress— Revised Statutes, § 5044—does not, *ex proprio vigore*, dissolve attachments so circumstanced, but that it requires action of the court in which the proceeding is pending to have that effect.   In support of this, it is argued that, when a State court has acquired jurisdiction of person and subject-matter before bankruptcy proceedings are instituted, and is permitted to prosecute the suit until judgment is rendered, such judgment is conclusive upon the assignee, and upon all other persons.   There are many categories to which this principle applies.   Among them may be stated cases in which the suitor has acquired a lien, by execution or attachment, more than four months before the adjudication in bankruptcy.   So, also, when the assignee makes himself a party to a suit by or against the bankrupt, or, having notice, fails to make himself a party, and the suit is prosecuted to a final determination.   As a settlement of the matters involved in the issue, such judgment is conclusive upon the assignee, and upon all persons claiming in his right.   In such cases, in the absence of fraud, or kindred defense, it would seem the assignee could accomplish nothing by intervening. *Crowe v. Reid,* 57 Ala. 281; *Martin v. Lile,* 63 Ala. 406; *Doe v. Childress,* 21 Wall. 642; *Eyster v. Goff,* 91 U. S. 521; *Thatcher v. Rockwell,* 105 U. S. 467; *Dimock v. Revere Copper Co.,* 117 U. S. 467; *Winchester v. Heiskell,* 119 U. S. 450; *Johnson v. Bishop,* 1 Woolw. 324.

The question is a very different one, when the attachment has been levied less than four months before the adjudication in bankruptcy.   The determination of the matter at issue is the existence *vel non* of the debt on which the attachment is sued out.   The liability of the property to the attachment is not one of the issues involved.   The levy is important only in furnishing constructive notice of the suit, and bringing the defendant constructively before the court.   If there is a plea, or personal appearance for the defendant, this super-

[Sullivan v. Rabb.]

sedes the constructive, by actual notice, and the suit becomes, to all intents, a suit *inter partes.*—Code, 1876, § 3325; Code, 1886, § 2996; *Corley v. Shropshire,* 2 Ala. 66.    In this case, the suits against the corporation were defended; and there being no plea of discharge in bankruptcy made good, the judgment against the bankrupt corporation was as binding as if there had been no bankruptcy.    In no sense, however, did this fix the liability of the attached property to the judgments recovered in the attachment suits.    That had not been in issue.

The act of Congress—Revised Statutes, § 5044—declares, that when there has been an adjudication in bankruptcy, an assignee appointed, and the register has assigned and conveyed to him the property of the bankrupt, "such assignment shall relate back to the commencement of the proceedings in bankruptcy, and, by operation of law, shall vest the title to such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any attachment made within four months next preceding the commencement of the bankruptcy proceedings."

In *Sims v. Jacobson,* 51 Ala. 186, this court decided, that an adjudication in bankruptcy, and an assignment of the bankrupt's property to the assignee, did not, by their unaided force, dissolve attachments levied on the bankrupt's property less than four months before the commencement of the bankruptcy proceedings, but that it required the action of the court to effect that result.    That decision was pronounced in 1874. Since that time, the question has been several times before the Supreme Court of the United States, and their ruling is directly the reverse of ours.    In one case, the attached property had been sold, and the proceeds paid to the plaintiff in attachment before the institution of the proceedings in bankruptcy; yet, because the latter took place in less than four months after the attachment, it was held that the plaintiff thus receiving the money must pay it to the assignee.—*Conner v. Loug,* 104 U. S. 228.    In this case, the attachment had accomplished its purpose, and could not be disolved by any action of the court.    See, also, *Chapman v. Brewer,* 114 U. S. 158; *Bank v. Sherman,* 101 U. S. 403; *Bracken v. Johnson,* 4 Dil. 518.

The question last considered involves the construction of an act of Congress, and of such questions the Supreme Court of the Uninted States has supervisory power over this court.    We feel bound to conform our decisions to the

[Hill v. Nelms.]

ruling of that court.   The chancellor erred, in holding that
it required affirmative action of the Circuit Court of Escam-
bia to dissolve the attachments.   *Sims v. Jacobson*, so far
as it conflicts with the rulings above, is overruled.

The remaining question is, whether the complainants, in
their averments and proof, have made a case entitling them
to an injunction.   We think they have.   The defendants
admit themselves unable to respond in damages, and it would
require many suits to secure to complainants even the form
of compensation.   The chief value of the land is its timber,
and to denude it of that would be to inflict an irreparable
injury.   We have so often declared the rules in such cases,
that we consider their repitition unnecessary.—*Lyon v.
Hunt*, 11 Ala. 295; *Boulo v. N. O., M. & S. R. R. Co.*,
55 Ala. 480; *Hammond v. Winchester*, 82 Ala. 470; 2 Sto.
Eq. Jur. §§ 928, 929.   Complainants are entitled to a per-
petual injunction.

The decree of the chancellor is reversed, the injunction
reinstated, and the cause remanded, that the receiver may be
brought to a settlement.   In all future proceedings, the
chancellor will conform to the principles of this opinion.

Reversed and remanded.

CLOPTON, J., not sitting.