## SETH H. WETHERBEE v. MARY DUNN et als.

| 36 | 249 |
| 80 | 169 |

| 36 | 249 |
| 137 | 310 |

ACTION TO SETTLE DISPUTED BOUNDARIES.—The bare existence of a controverted boundary is not sufficient ground for relief in equity, by an action to settle disputed boundaries between adjoining land owners. Before Courts of equity will interfere in such cases some peculiar circumstances must exist, of such a nature that an action of ejectment will not afford adequate relief.

APPEAL FROM JUDGMENT.—The one year within which an appeal from a judgment may be taken must be computed from the time the judgment is announced by the Court and entered in its minutes, and not from the date of its entry in the Judgment Book by the Clerk.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The Court below dismissed the bill because the pleadings and facts showed it to be a case where relief could be obtained in a Court of law.

The other facts are stated in the opinion of the Court.

*S. F. & J. Reynolds,* for Appellant Wetherbee.

It was insisted by the defendants' counsel in the Court below that a bill cannot be maintained in this State to settle the boundaries of land between adjoining owners. That objection was mainly based upon the fact that our reports do not contain a suit of that character. If the law permits such suits, there can be no force in the fact that this happens to be the first of that character in this State.

*Penn* v. *Baltimore,* 1 Ves. 444, was a bill filed in the Court of Chancery to settle the boundaries between the lands of William Penn and Lord Baltimore. The Court not only entertained the suit, and settled and fixed the boundaries between their several grants, but determined and settled their respective rights and the title to the lands of each.

*Cox* v. *Foley,* 1 Vern. 359, was a bill filed to be relieved touching rents issuing out of lands. The bill stated that rent had been paid time out of mind, but that no recovery at law could be had. The kind of rent was not known, and

the boundaries of the land were uncertain. Several precedents were produced where the Court had relieved in like cases, and the Court granted the relief.

A form of decree in cases of this kind is found in Seaton's Forms of Decrees, page 202. The decree in a suit to settle the boundaries directs that after the lands are set out and the boundaries fixed and established the defendant shall deliver possession thereof to the complainant, and that the complainant and his heirs shall hold and enjoy the same against the defendant; and in *Penn* v. *Baltimore* it was held that the Court had the power, by a writ of assistance, to enforce the decree.

*Duke of Leeds* v. *Corporation of New Radnor*, 2 Bro. 338, is a case of the same kind and character.

*George R. Parburt,* for Appellants Tracy *et als.*

*Gregory Yale,* for Respondents.

The true nature of the action, as stated in the complaint, is to settle conflicting rights among the owners, and to restore the possession of the land of which the plaintiff has been wrongfully ousted, and which is held adversely by the defendant Dunn. This presents a strict legal claim, and in its legal bearing asks the relief always sought in the possessory action of ejectment. Counsel for appellant Wetherbee invoke the rule which settled Mason and Dixon's Line, under the decision of Lord Hardwicke, in 1 Vesey, in 1750, as cited by counsel, after failing to find a case in the United States to suit his purpose. But this case is no authority for the bill. All that it decides is that the Court of Chancery in England would, at that day, decree specific performance of articles executed in England concerning boundaries of two provinces in America. (*Penn* v. *Baltimore*, 1 Ves. 444.)

It is unnecessary to examine the case, and it was out of place to go so far from home for authority. Story's Equity, in Chapter XI, is devoted to the question, and several sec-

tions were cited from it on the argument below. The history of the remedy is given here, and it is distinctly stated that whatever has been its origin, it is watched with jealousy by Courts of equity of late years, and there is no inclination to favor it, unless special grounds are laid to sustain it. The general rule now adopted is not to entertain jurisdiction in cases of confusion of boundaries, upon the ground that they are in controversy, unless there is some equity superinduced by the act of the parties. (Sec. 615.) Where there is an ordinary legal remedy there is certainly no ground for the interference of a Court of equity, unless some peculiar equity supervenes, which a Court of law cannot take notice of or protect. (Redfield's Ed., Sec. 616.)

By the Court, SANDERSON, J.:

This action purports to be what would have been, prior to the adoption of our code of procedure in civil cases, a bill in equity to ascertain and settle disputed boundaries between adjoining land owners. It was brought against two classes of defendants—first, the widow and minor heirs of George Dunn, deceased; and second, the widow, heirs, and executors of Frederick P. Tracy, deceased. Each class of defendants was represented by different counsel. There seems to have been no dispute between the plaintiff and the Tracy heirs; for the description of the land claimed by the latter, as given in their answer, is the same as that contained in the complaint, and the contest at the trial was between the plaintiff and the Tracy heirs on one side, and the heirs of Dunn on the other.

The transcript shows that the case first came on for trial, without a jury, on the 24th of January, 1865, John Reynolds appearing as attorney for the plaintiff, and James Pratt for the Tracy heirs, but no one appearing for the heirs of Dunn. A trial was then had without the presence of the only parties to the action who had any interest in defeating it, and a judgment was obtained in all respects satisfactory to the

plaintiff and the Tracy heirs.   This judgment, however, on the 30th of the same month, was vacated upon the motion of Gregory Yale, attorney for the heirs of Dunn, on notice to the plaintiff, but without notice to the Tracy heirs, and in the absence of their counsel; and an order made allowing the Dunn heirs to introduce their evidence, leaving the evidence which had been already taken to stand.   The trial was again proceeded with on the 6th of February, 1865, at which time James Pratt, attorney for the Tracy heirs, appeared without any objection to the order opening the case, and participated on their behalf in the further trial of the case, which resulted in a judgment dismissing the action at the cost of the plaintiff—which judgment was rendered on the 1st of May, 1865, but was not entered of record in the Judgment Book until the 12th of May, 1866, more than a year after it was rendered.   The plaintiff moved for a new trial, which was denied on the 2d of April, 1866, and appealed from the judgment and the order denying a new trial on the 30th of May following.   On the day last named the Tracy heirs also appealed from the judgment.   The two appeals have come up in the same transcript, which contains the statement on the plaintiff's motion for a new trial, and the statement on the appeal of the Tracy heirs from the judgment.

The appeals from the judgment were both taken more than a year after its rendition, and cannot, therefore, be entertained under the rule announced by us in *Gray* v. *Palmer*, 28 Cal. 416; *Peck* v. *Curtis*, 31 Cal. 207, and *Genella* v. *Relyea*, 32 Cal. 159.   In all of those cases we held that the time within which an appeal from a judgment may be taken must be computed from the time the judgment is announced by the Court and entered in its minutes, and not from the date of its entry in the Judgment Book by the Clerk.

In relation to the plaintiff's motion for a new trial, upon the case made both by the pleadings and the evidence, our views coincide with those expressed by the Court below.

It may be conceded, that under the head of concurrent

jurisdiction, Courts of equity may entertain cases of this character; but it is certain that of late they have confined their jurisdiction in respect to such cases within very narrow limits. It can rarely happen that the action of ejectment will not afford adequate relief in such cases; and wherever such appears to be the case, Courts of equity will decline to interfere, upon the familiar principle that where there is an adequate legal remedy there is no ground for relief in equity. "The general rule now adopted is not to entertain jurisdiction in cases of confusion of boundaries, upon the ground that the boundaries are in controversy; but to require that there should be some equity superinduced by the act of the parties—such as some confusion, where one person has plowed too near another, or some gross negligence, omission, or misconduct on the part of persons whose special duty it is to preserve or perpetuate the boundaries." (1 Story's Eq. Jur., Sec. 615, *et seq.*)

The existence of a controverted boundary by no means constitutes sufficient ground for relief in equity; in all such cases the remedies at law are adequate. Before Courts of equity will interfere, some equitable ground must attach itself to the controversy—such as fraud, or some relation between the parties which makes it the duty of one of them to protect and preserve the boundaries; or the prevention of a multiplicity of suits; or that the question affects a large number of persons, and the boundaries have become confused by lapse of time, accident, or mistake.

The complaint in this case, examined by the light of what has been said, fails to show, in our judgment, any ground whatever for relief in equity. It avers that the several parties named—the plaintiff, the Tracy heirs, and the heirs of Dunn—are "seized and possessed in fee simple, in severalty and in separate and distinct parcels, of Block Number Twenty-five in the City and County of San Francisco." It then proceeds to show and particularly describe by boundaries—first, the portion of which the Tracy heirs are seized and possessed; second, the portion of which the heirs of Dunn

are seized and possessed; and third, the portion of which the plaintiff is seized and possessed, by the general averment that "he is seized and possessed of all the rest and residue of the block." Thereafter the complaint proceeds to show how the parties to the action became so seized and possessed, which portion of the complaint is wholly immaterial to the question in hand. It next avers that the plaintiff and the heirs of Dunn "do now differ and dispute as to the courses and distances" of certain lines thereinbefore described, and that they are "unable to agree among themselves, or settle the boundaries" of the parcel in question; and generally that "said lines and boundaries are so indefinite, and have become so confused and confounded, that the parties and owners of the respective parts and portions of said block of land cannot ascertain, determine, and settle" the same without the aid of the Court. It is then charged that Mary Dunn has, without the knowledge or consent of the plaintiff, removed certain division fences, and claims to hold by possession parts of said block which belong to the plaintiff and the heirs of Tracy. Add to this that it appears throughout that George Dunn in his lifetime, and his heirs after his death, have been in the exclusive possession of the entire block since 1854, for themselves and their alleged co-owners, and the entire substance of the complaint is stated.

This brief analysis of the complaint is sufficient, without further comment, to show that the plaintiff was entitled to no relief which he could not have obtained at law in the ordinary action of ejectment. A controversy about boundaries is alleged, but to it are attached none of the grounds for relief in equity to which we have referred. Worse than that: it is at least doubtful whether the complaint is not *felo de se* in respect to the alleged controversy about boundaries, for, as already stated, it contains matter which is nearly, if not quite, the equivalent of an allegation of an ouster and an adverse holding on the part of the widow Dunn, thus showing that the real controversy is about the title to the land

claimed by the plaintiff and the heirs of Tracy, and not about its boundaries merely. That such is the real character of the case is not left in doubt, when we turn to the testimony given at the trial. It there appears that the Dunn heirs were, at the commencement of the action, and had been for a long time prior thereto, in the adverse possession of the whole block. Where such are the conditions, there is no foundation for relief in equity, and no occasion to go elsewhere than to the Courts of law. Had the Court below sustained the demurrer to the complaint, and dismissed the action without a trial upon the facts, we should not have disturbed its judgment. Much less are we disposed to do so in view of the facts shown by the testimony.

Judgment and order affirmed.