# CHARLESTON.

## McMILLAN v. FERRELL.

### February 25, 1874.

1. Notwithstanding the act of the Legislature approved the 21st day of December, 1872, entitled "an act regulating appeals, writs of error and *supersedeas*," does not allow an appeal from an order of a judge of a circuit court granting an injunction, an appeal from such an order, pending in the Supreme Court of Appeals of this State, on the 31st day of December, 1872, and the first day of January, 1873, and not heretofore decided, is still pending in this Court and it still has power and jurisdiction to hear and determine the same upon its merits or otherwise, as may be proper, under the provisions of the twelfth, seventeenth and twenty-first sections of the Schedule to the Constitution of this State, and the act of the Legislature, approved January, 11, 1863, entitled "An act organizing the Supreme Court of Appeals, defining its jurisdiction and powers, and prescribing its manner of proceeding," and especially under the provisions of the fourth section of the latter act.

2. An injunction is not granted to restrain a mere trespass to real property, when the bill does not, on its face, clearly aver good title in the plaintiff; nor, even then, as a general rule, (though perhaps not universal) where the injury complained of is not destructive of the substance of the inheritance of that which gives it its chief value, or is not irreparable, but is susceptible of complete pecuniary compensation and for which the party may obtain adequate satisfaction, in the ordinary course of law.

An appeal from an order of the Hon. George Loomis, then judge of the ninth judicial circuit, as organized by the act passed July 17th, 1868, dated May 10th, 1871, awarding an injunction, in vacation, to Jordan McMillan, the complainant in the bill, against William Ferrell and Benjamin H. Smith, the respondents.

1874.
January Term

| 7 | 223 |
| 35 | 462 |

| 7 | 223 |
| 42 | 437 |

| 7 | 223 |
| 46 | 22 |

| 7 | 223 |
| 48 | 541 |

| 7 | 223 |
| 53 | 221 |
| 53 | 222 |

| 7 | 223 |
| 56 | 122 |
| 57 | 220 |

1874.
January Term.

McMillan
v.
Ferrell.

The bill, after alleging that the complainant received a conveyance from one McFarland for eight thousand acres of land in Roane county, this State; that on the 16th day of August, 1870, the jury in a certain action of ejectment then pending in the circuit court of said Roane county, wherein complaintant was plaintiff and certain persons hereinafter named in the opinion of this Court, were defendants, "found the defendants not guilty," and for the plaintiff, "the residue of said eight thousand acres, described in the declaration, and not being conveyed prior to the conveyance of said McFarland to plaintiff," and filing a copy of said verdict, as an exhibit, charges that one Ferrell, son of respondent Ferrell, who, "although he was one of the defendants to said ejectment suit, claimed no interest whatever, and occupied no part of the land thereinafter described in said bill," "that the said son pretends since said judgment that he has bought of respondent Smith four hundred acres, part of said eight thousand acres," "that said four hundred acres were never conveyed to said respondent Smith, or to any one else whose interests were adverse to those of complainant;" and that "the said four hundred acres were found to·be complainant's by the verdict of the jury and judgment of the court thereon" aforesaid.

The bill then charges that the said son has forcibly wrested possession of said four hundred acres from complainant, describes the same, and asserts, as grounds for the interposition of the restraining powers of a court of equity, that "he has fenced in thirty acres of said four hundred;" "has cut and is cutting and destroying both within and without his enclosure large quantities of the most valuable timber thereon;"—"is committing waste thereon," that "a good deal of timber is now lying on the ground where said Ferrell felled it,"—that "complainant has sold said land and is being greatly injured by the acts aforesaid;" that "neither Ferrell or Smith have a shadow of title to said land," and concludes with the usual prayer, in such cases.

The injunction thus awarded, was duly perfected. and proper process duly issued and served upon the respond- ents. From the order awarding said injunction, and without having answered the said bill, the respondents took this appeal.

*Benjamin H. Smith* for the appellants.

*Okey Johnson* for the appellee.

HAYMOND, PRESIDENT:

Plaintiff presented his bill to the Hon. George Loomis, then judge of the ninth judicial circuit, as organized by the act of July 17, 1868, though the same was addressed to the Hon. Robert S. Brown, then judge of the circuit court of Roane county, praying that defendants, and each of them, and their agents, be enjoined from clearing, cutting timber upon or trespassing on the land in the bill mentioned; and, also, from removing from the land the timber that they or either of them, have cut, or caused to be cut thereon. And on the 10th day of May, 1871, judge Loomis granted the injunction, as prayed for, to take effect on the plaintiffs filing bond, with good security, in the penalty of five hundred dollars, conditioned according to law. Afterwards, on the 16th day of May, 1871, the plaintiff filed his bill of injunction, in the clerk's office of Roane county, gave the required bond with security, and caused a summons with the restraining order endorsed thereon, to be duly issued upon the bill, against the defendants, returnable to the first Monday in June thereafter. The summons was duly executed upon the defendants and returned. From the order of the judge granting the injunction the defendants to the bill appealed to the Supreme Court of Appeals, as they then lawfully might; and the case was pending in the Supreme Court of Appeals, on the first day of January, 1873. The appeal wss perfected on the —— day of May, 1871.

29

The plaintiff insists that the appeal should now be dismissed, because it was taken under the provisions of the Code of this State, of 1868, chapter one hundred and thirty-five, section one, which provided for an appeal from an order granting an injunction, and the Legislature by an act approved December 21, 1873, entitled "An act regulating appeals, writs of error and *supersedeas*," repealed the act allowing appeals from orders granting injunctions. It will be seen by reference to the seventeenth section of the Schedule to the Constitution of this State, adopted by the voters, and which took effect on the 22nd day of August, 1872, that it is therein expressly provided that "the records, books, papers, seals and other property and appurtenances of the existing Supreme Court of Appeals, shall, on the first day of January, 1873, or as soon thereafter as may be, be transferred to, and remain in the care and custody of the Supreme Court of Appeals established by this Constitution, until otherwise provided by law; and all civil or criminal causes, petitions and other proceedings then pending in the Supreme Court of Appeals, shall be proceeded with by the Supreme Court of Appeals established by this Constitution, to final judgment." By the twelfth section of the Schedule, it is provided that the Judges of the Supreme Court of Appeals existing at the adoption of the Constitution, should continue in office until the 1st day of January, 1873. The twenty-first section of the Schedule provides, that "All the courts oft justice now existing shall continue with their present jurisdiction, and be held as now prescribed by law, until the judicial system established by this Constitution shall go into effect; and all rights, prosecutions, actions, claims and contracts shall remain and continue as if this Constitution had not been adopted, except so far as the same may be affected by the terms and provisions of this Constitution, when it shall go into effect." By the twelfth section of the Schedule it is also provided that the terms of office of the Judges of the Supreme Court

of Appeals, of the judges of the circuit courts, and of all county and district officers, whose election is provided for by this Schedule, shall commence on the 1st day of January, 1873. Although the Constitution, for many purposes took effect on the 22d day of August, 1872, still the permanent judicial system established by the Constitution did not fully take until the term of office of the judges thereunder commenced, which was on the 1st day of January, 1873. By the act of the Legislature approved January 11, 1873, entitled, "An act organizing the Supreme Court of Appeals, defining its jurisdiction and powers, and prescribing its manner of proceeding," and especially in the fourth section thereof, it is provided, that all suits and proceedings which shall be pending in the present Supreme Court of Appeals on the 31st day of December, 1872, shall be proceeded in and determined by the Supreme Court of Appeals, the Judges of which were elected on the 22d day of August, 1872. The act of December 21, 1872, did not take effect till the 31st day of December after its passage, and does not, in any of its provisions pretend, expressly, to in any wise affect appeals, &c., then pending in the Supreme Court of Appeals, or in any wise to modify or alter the provisions of the Schedule, touching such appeals, &c., before referred to. And the said act of 11th of January, 1873, in addition to the provisions of the Schedule, provides that such causes, &c., shall be continued and determined by this Court. This cause was pending in the Supreme Court of Appeals, on the 31st day of December, 1872, and on the 1st day of January, 1873, and under the provisions of the Schedule and statute, it became the duty of this Court to hear and determine it. Notwithstanding, by the provisions of the act of 21st of December, 1872, appeals cannot be taken to this Court from orders of judges of the circuit courts granting injunctions, appeals pending on the 31st day of December, 1872, in the Supreme Court of Appeals, regularly taken and perfected, were, and are, not affected, by the said act,

and were not intended to be thereby affected, in the least. The plaintiff's motion to dismiss this appeal must, for these reasons, be overruled.

I now proceed to consider this cause upon its merits. The plaintiff, in his bill, alleges, substantially, that he received, in 1868, a conveyance for eight thousand acres of land in Roane county from one McFarland; that in August, 1870, the jury, in an action of ejectment, then pending in the circuit court of Roane county, wherein he was plaintiff and William Ferrell, and William John Hall, John Sarver, Marshall Clarkson, John W. Webb, Isaac Post and Marshall Depue, were defendants, found the said defendants not guilty, and found for the plaintiff, the residue of the eight thousand acres, described in the declaration, and not being conveyed, prior to the conveyance of McFarland to plaintiff that the court entered judgment on the verdict; that he (plaintiff) charges that since the rendering of said verdict, and judgment, William Ferrell, one of the defendants, to the action of ejectment, who claimed no interest whatever, and occupied no part of the land in said declaration described pretends, that since the judgment aforesaid, he has bought four hundred acres of said eight thousand acres, from B. H. Smith; that the four hundred acres were never conveyed at any time to said B. H. Smith, or to any one else whose interests therein are adverse to the claim of plaintiff; that the four hundred acres are a part of the eight thousand acres aforesaid, and was found to be his by the verdict of the jury, and judgment of the court that he (plaintiff) charges that said William Ferrell ha forcibly wrested the possession of the said four hundred acres, which lies in the north-east corner of the eight thousand acres, on Hays' Fork of Henry's Fork of the West Fork of the Little Kanawha river, from plaintiff; that Ferrell has fenced in about thirty acres of said land and has cut, and is on said four hundred acres, cutting and destroying, both within and without said enclosure, large quantities of the most valuable timber

thereon, and is committing waste thereon; that a quantity of the said timber is now lying on the ground, where Ferrell felled it; that plaintiff has sold the land, and is being greatly injured by the said acts of Ferrell; that neither Ferrell or B. H. Smith, have a shadow of title to said tract of land. These are all the material allegations of the bill upon which the prayer for the injunction is predicated, and upon those allega- tions alone, supported by the usual affidavit of their truth, the order of the judge granting the injunction, must stand or fall. The plaintiff does not expressly aver title in himself, at any time, to the land. His charges against Ferrell amount to nothing more than a common trespass, and he makes no charges whatever against Smith. He does not allege the insolvency of Ferrell, or Smith, or show upon the face of the bill, in any manner that he has not a complete remedy at law, for obtaining redress or compensation for the alleged trespass, or that he will sustain irreparable damages, unless equity interposes, and restrains and prohibits further trespassing upon the land. And he, in fact, expressly avers that he has sold the land.

By the mere reading of the bill, it is manifest that it fails to allege or aver sufficient material elements or facts necessary to entitle plaintiff to invoke the interpo- sition and aid, of a court of equity by process of injunc- tion, or otherwise. "The objection to the injunction, in cases of private trespass, except under very special circumstances, is, that it would be productive of private inconvenience, by drawing cases of ordinary trespass within the cognizance of equity and by calling forth, upon all occasions, its power to punish by attachment, fine and imprisonment, for a further commission of tres- pass, instead of the more gentle common law remedy by action and the assessment of damages by a jury. In or- dinary cases, this latter remedy has been found amply sufficient for the protection of property; and it has not been thought advisable, upon any principle of justice or

policy, to introduce the chancery remedy, as its substitute, except in strong and aggravated instances of trespass, which go to the destruction of the inheritance, or where the mischief is remediless. This appears to be the English doctrine, and the practice of courts of equity in most of the States of the Union. It would be difficult to find a case in which an injunction has been held properly granted to restrain a trespasser, merely because he was a trespasser, without showing that the property itself was a peculiar value, and could not well admit of due recompense, and would be destroyed by repeated acts of trespass. In ordinary cases the damages to be assessed by a jury, will be adequate for a check, and for a recompense, especialy if the trespasser is not insolvent." See opinion of judge Kent in *Jerome v. Ross,* 7 Johns. Ch. (N . Y.) 315 ; *Stevens v. Beekman,* 1, Id., 318.

In the case of *Anderson v. Harvey's heirs,* 10 Gratt. 398 ; judge Daniel in delivering the opinion of the court says : "I think it is clear that, at the time of the alleged trespass on the ore bank, by the appellant, the appellees must be regarded as in possession of it, with a clear and incontestible title, they might have instituted their action of trespass against the appellant; but were not bound to do so before or instead of applying to a court of equity to restrain the appellant from commiting further trespasses on the property in dispute. Were they bound to litigate and discuss, in a court of law, rights, which had not only been adjudicated as far back as 1807, but which had been solemnly recognized in the conveyances to which the appellant must necessarily refer as the sources of any title which he could assert ? I think not. The practice of courts of equity of interfereing in such cases by way of injunction, is one comparitively of recent origin, but the jurisdiction is now fully recognized and well established by cases both in England and America. *Mitchell v. Dors.* 6 Ves. (Jr.) Ch. 147 ; *Hanson v. Gardiner,* 7 Ves. (Jr.) Ch. 306 ; *Thomas v. Oakley,* 18 Ves. (Jr.) Ch. 184 ; 3 Daniel

Ch. Prac., 1852–3; *Stevens v. Beekman,* 1 Johns. Ch. (N. Y.,) 318; *Jerome v. Ross,* 7 Johns. Ch. (N. Y.,) 315; *Smith v. Pettengill,* 15 Vermont, 84. The land upon which the trespass is alleged to be committed is proved to be of little or no value, except for the iron ore found on it, which is found to be of an excellent quality. The trespass is one which goes to the change of the very sub-stance of the inheritance, to the destruction of all that gives value to it. The fact proved by the appellant, that the value of the ore per load could be readily estimated, does not deprive a court of equity of its right to inter-fere in the case by way of injunction. The same might be shown in most cases of the kind. The products of most mines have a value already fixed or of easy ascer-tainment by proof; yet it was in prevention of like tres-passes to this very species of property, mines of ore, coal, &c., that the jurisdiction in question had its origin, and still continues to be most frequently exercised." The case last cited is not similar to that now under con-sideration. On principle I am clear that the matters and things stated in plaintiff's bill, are not sufficient, ad-mitting them to be true, to warrant the granting of the injunction awarded in this case.

For these reasons, the order of the judge, in granting the injunction in this cause, and dated the 10th day of May, 1871, must be reversed and annulled, and the ap-pellants recover their costs in this Court expended. And the plaintiff's bill must be dismissed.

The other Judges concurred.

INJUNCTION DISSOLVED AND BILL DISMISSED.