# Ashurst *v.* McKenzie.

*Bill in Equity to Quiet Title, Remove Cloud, Establish Boundary and Enjoin Trespasses on Land.*

1. *Quieting titles in equity.*—In the absence of statutory provisions, a court of equity will only take jurisdiction to quiet the titles to land, at the instance of a person in possession having the legal title, where several unsuccessful actions at law have been brought against him by one person, or where many persons assert equitable titles against him, whether he holds under a legal or equitable title.

2. *Removal of cloud on title to land.*—The jurisdiction of a court of equity to settle a disputed boundary between two co-terminous proprietors, can not be sustained on the ground of removing a cloud on the title of the person in possession, when there is no conflicting or overlapping description in their respective deeds, and the only question is the location of the true boundary between their respective tracts.

3. *Establishing disputed boundary in equity.*—The jurisdiction of courts of equity to establish disputed boundaries is ancient and well defined, and is effectuated through commissioners who are appointed to go on the land, ascertain, fix and mark the line, and who report their action to the court; but the jurisdiction does not extend to

[Ashurst v. McKenzie.]

every case of disputed boundary, nor even to every case where the
boundary has become confused or obliterated, unless some special
ground for equitable interposition is shown, as where the confusion
or obliteration has resulted from the defendant's fraud or neglect of
duty.

4. *Same.*—Even where facts are averred which would authorize the
interference of the court to establish a disputed boundary, that relief
will not be granted when the party complaining is already in posses-
sion of all the land which he claims.

5. *Injunction of trespasses.*—A court of equity will, at the instance
of a party in possession who shows a clear legal title in himself, enjoin
the commission of trespasses of a continuous or recurring character,
especially where the defendant is insolvent; but, when each party
asserts a legal title to the land in dispute, and the defendant asserts
prior adverse possession in himself long enough to confer a title under
the statute of limitations, he will be allowed a reasonable time to
assert and maintain his title by an action at law before an injunction.
is declared perpetual.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JOHN A. FOSTER.

In 1844, John McKenzie owned certain lands in Macon.
County, Alabama. In said year he gave a portion of that land
to his daughter, Mary S. Wright, but did not execute a deed
of gift. In 1862, one Thompson purchased this Wright land
on time, and received a bond for title from John McKenzie
and wife. In 1864, R. T. Ashurst, the appellant in this court
and defendant in the court below, bought from Thompson,
and took possession of the land. In 1869, said R. T. Ashurst
received a deed from John McKenzie and wife, and Mary S.
Wright and her husband, after he had paid the purchase-
money for said land. In 1866, John McKenzie sold the re-
mainder of said land to R. R. Ashurst, son of R. T. Ashurst,
took notes for the deferred payments on the purchase-money,
and put the purchaser in possession. Subsequently he trans-
ferred the purchase-money notes given by said R. R. Ashurst
to P. R. McKenzie, one of the complainants in the court below,
and appellees here. Upon default in the payment of these
notes, said P. R. McKenzie filed his bill in chancery against
said R. R. Ashurst, to enforce his vendor's lien under said
notes. A decree was rendered, the lands sold thereunder,
and in January, 1876, a deed was made to Mrs E. A. Mc-
Kenzie, who was the purchaser. In 1877, Mrs. E. A. Mc-
Kenzie, sold these lands to Mrs. E. C. McKenzie, wife of P. R.
McKenzie, and mother of the other complainants. Mrs. E. C.
McKenzie died in 1877, intestate. Several years after these
transactions, it was discovered that R. T. Ashurst and his son,
R. R. Ashurst, had, during their occupancy of the respective
portions of said land, destroyed and obliterated the original
boundary line between said tracts of land; and that said R.
T. Ashurst was claiming about ten acres of the land which.

[Ashurst v. McKenzie.]

rightfully belonged to said P. R. McKenzie and the children of him and Mrs. E. C. McKenzie.

As the bill avers, it being impossible to amicably adjust the controversy about the boundary line, and the courts having been frequently resorted to, without any effect, for the purpose of redressing wrongs and counter-wrongs, the said P. R. McKenzie and his and Mrs. E. C. McKenzie's children filed the present bill against the appellant, R. T. Ashurst; and prayed to have the cloud created by defendant's claim to said portion of the land, removed, to have the titles quieted, to have the disputed boundary line established, and to enjoin the trespasses committed by the defendant and his tenants. The defendant demurred to the bill, and assigned, among other grounds, that the complainants had an adequate remedy at law; and (5.) "That it was apparent from the bill that its purpose was to have a court of equity settle a disputed boundary line." The Chancellor overruled each ground of demurrer; and the defendant then filed his answer. The facts as averred in said answer are sufficiently shown in the opinion of this court.

Upon final hearing, on pleadings and proof, the chancellor decreed that the complainants were entitled to the relief prayed; and ordered the temporary injunction to be made perpetual, and established a boundary line between the lands of the complainants and defendant.

The defendant brings this appeal, and assigns the overruling of his demurrers, and the final decree as error.

S. B. PAINE, for appellant.—The demurrers should have been sustained.—Story's Eq. Jur. p. 249; 27 Ala, 586; 19 Ala. 297; 64 Ala. 248; 83 Ala. 225.

P. B. McKENZIE, *contra.*—There was no error in overruling the defendant's demurrers.—*Land v. Cowand,* 19 Ala. 297; *Saunders v. Godby,* 23 Ala. 473; *Lee v. Lee,* 55 Ala. 590; *Westmoreland v. Foster,* 60 Ala. 448; *Lyons v. Hunt,* 11 Ala. 295; 5 Peters Rep. 78. There was no error in the decree rendered.—2 Amer. & Eng. Encyc. of Law, 497; Tiedeman on Real Prop., § 828; *Pollard v. Maddox,* 28 Ala. 325; *Baker v. Barclift,* 76 Ala. 414; *Swann v. Lindsey,* 70 Ala. 507; *Alexander v. Wheeler,* 69 Ala. 332: Burwell on Limitations, 340, 348.

McCLELLAN, J.—There are suggestions in the present bill looking to relief by way of quieting, and removing a cloud from, complainants' title to the land in controversy. But

neither the averments nor proof are sufficient to authorize such relief.

1.   With respect to bills to quiet titles we have no such statutory provisions as exist in some of the States under which such bills have come to be an ordinary mode of trying disputed titles, and the jurisdiction of chancery can be invoked to this end only upon the general principles of equity jurisprudence, which afford this remedy to a complainant "in possession holding the legal title, when successive actions at law, all of which had failed, were brought against him by a single person out of possession, or when many persons assert equitable titles against a plaintiff in possession holding the legal or an equitable title."—3 Pom. Eq. Jur., § 1396. None of these necessary facts are in this case, and the suggestion as to relief by way of quieting titles may be dismissed from further consideration.

2.   As to removing a cloud from complainant's title, the suggestion is equally lacking in averment and proof. There is no allegation or evidence of any muniment of title, proceeding, written contract, or paper showing any color of title in the defendant, which could cast a shadow on the title of complainants to any part of the land; there is no over-lapping of description in the muniments held by either. The land of complainants and defendant join. The line which separates them is in dispute and is to be determined by evidence *aliunde*. Each admits that the other has title up to his line wherever it may be, and the title papers of neither fix its precise location. So that there is no paper, the existence of which clouds the title of either party, and nothing could be delivered up and cancelled under the decree of the court undertaking to remove a cloud. That suggestion may also be summarily dismissed. The real purposes of the bill appear to be two: *first*, to establish by a decree of the court a disputed boundary line between the coterminous proprietors; and *second*, to enjoin the defendant from trespassing upon any part of the land thus found to belong to complainants.

3.   The jurisdiction of chancery to establish disputed boundaries is ancient and well defined. It does not arise upon any mere dispute as to the location of the boundary between adjacent parcels of land, or even upon a mere dispute as to such location of a confused or obliterated line. There must in addition to all this be some special ground of equitable interposition. Such grounds, it is said, may be predicated of the fraud or neglect of duty of the defendant, whereby the confusion and obliteration has resulted; and where the line is

marked upon the surface of the ground, and is plowed over and obliterated for the purposes of a fraudulent insistence that it is elsewhere than at its true location; or by a person having at the time possession of his own and the adjoining parcel, and thus being under a duty of maintaining and preserving the demarkation of the two tracts.—3 Pom. Eq. Jur., 1384-5; *Wake v. Conyers*, 1 Eden Ch. 227; *Rous v. Baker*, 4 Town P. C. 660; *Speer v. Crowter*, 2 Merio, 410-17; *Norris' Appeal*, 64 Pa. St. 275; *Hill v. Proctor*, 10 W. Va. 59; *Wetherber v. Dunne*, 36 Cal. 249.

And where the line is marked only by monuments at its terminal points—the boundary running directly between them—the destruction of these monuments under like circumstances, and consequent confusion and dispute as to the location of the line, would present a case for equitable action in fixing and declaring the boundary. In the case at bar, it is alleged that the true boundary was indicated originally both by a road or "turn row" running the whole length of the coterminous ownership, between, or on the line between, the two parcels, and by monuments standing at either end of the line thus superficially indicated. And while it is averred that the "turn row" has been obliterated by the defendant, it is also alleged that the monuments standing at either end of the boundary are still standing. Not only so but it appears more or less clearly in the averments, and with entire clearness in the testimony, that the line between these monuments was at the time the bill was filed, and at the time of the hearing, fully marked by posts at short intervals throughout its course, these posts having supported a fence built on the line, but which, except the posts, had been removed. On the case made by complainants, therefore, there is no confusion of boundaries, no obliteration of the true line, no state of facts which renders the interposition of chancery necessary to a determination of the line between the adjacent parcels. In like manner, the defendant relies upon a line as the true one between his land and that of complainants, which is also so marked and indicated by monuments as not to involve such confusion or obliteration as is essential to equity jurisdiction being exercised to its establishment. It is quite true that the two lines are not identical. On the contrary, while they have a common initial point on the eastern boundary, they strike the western line of the two parcels at points sufficiently distant from each other as to make a difference of about ten acres in the contents of either parcel; that is, if the line contended for by complainants is the true one, ten acres of the land claimed by defendant belongs to the former, and *vice*

*versa.* Neither side, it thus appears, concedes that there is any confusion as to the true boundary, but each insists that that boundary is a direct line between certain initial and terminal points which is also marked along its course by certain other monuments and surface *indicia.* It is at once manifest from the foregoing that the real nature of this proceeding, so far as the first purpose of the bill is concerned, is not to establish an obliterated and confused boundary—not to have a commission issue to bring order out of confusion and to ascertain and redefine an obliterated line—but to invoke the powers of the chancery court to an adjudication of title to the ten acres of land in dispute, a purely legal question triable alone by jury in a law court. Chancery jurisdiction to establish disputed boundaries is effectuated through a commission appointed to go upon the land and ascertain, fix and mark the true line, or being unable to determine and rehabilitate the real boundary, to establish a line between the adjacent proprietors which, though it is not assumed or intended to be identical with the original and true line, yet leaves to each proprietor the acreage to which he is entitled. The duty that would devolve upon such commission in this case manifestly would not be the ascertainment and location of the original line, or the establishment of an equitable boundary not identical with the original, but merely a determination upon the contention of the parties *pro and con* whether one or the other line claimed by them respectively is the true boundary, involving in reality a decision by the commission, subject to confirmation or rejection by the court, as to the ownership of the ten acres in controversy. And the fact that no commission was deemed necessary or appointed here demonstrates, if anything further were needed to that end, that the court on this bill, and under this evidence, could not, and did not undertake to, dispel confusion as to the boundary, but only undertook to determine a controverted issue of fact as to the title to the land in question. We are very clear that the chancery court was without jurisdiction to this end on the case presented to it. It was not a case of confusion of boundaries.—Story Eq. Jur., §§ 617–621; *Miller v. Warmington,* 1 Jac. & Walk. 463, 472; *Wetherber v. Dunne,* 36 Cal. 249.

4. Moreover, had the facts alleged and which complainants' evidence went to establish been otherwise of a character to invoke equity interposition to the establishment of disputed and confused boundaries, the bill to that end is fatally defective in that it shows that the complainants were in possession of all the land they set up any claim to. The relief by way of establishing a boundary, or, that being impossible, allotting

to complainants a sufficiency of land out of the two tracts—they being considered in the nature of a common fund for this purpose—to make up the full acreage of the parcel to which they are entitled, manifestly can not be worked out against a defendant who is in possession of no part of the land claimed by complainants and who therefore has nothing which could be taken away from him, either by delineation of the true boundary, or by an allotment to complainants of an area equal to that embraced in their parcel as originally bounded.—3 Pom. Eq. Jur. § 1385; *Atty. Gen. v. Stephens*, 6 De. G. M. & G. 111; *Godfrey v. Littel*, 2 Rus. & My. 630. The bill, therefore, can not be maintained for the purpose of determining to whom the land in controversy belonged. The relief prayed by way of establishing the boundary between complainants and defendant should not have been granted on the averments and proof found in this record. The 5th assignment of demurrer should have been sustained. The remaining assigments were not well taken, and were properly overruled.

5. With respect to the relief sought in the bill by way of the injunction of trespasses, it may be conceded that, pretermitting the question of title, the continuous or recurring character of the threatened trespasses alleged, entitle the complainants to have their commission enjoined, since redress at law could only be had by a multiplicity of suits, a fact of itself sufficient to determine the inadequacy of the legal remedy, and especially so in view of the defendant's alleged and admitted insolvency.—3 Pom. Eq. Jur., § 1357; 2 Story Eq. Jur., §§ 928–9; *Cox v. Douglas*, 20 W. Va. 175; *Sullivan v. Rabb*, 86 Ala. 433. But, as appears from what we have said in relation to the other aspect of this case, complainants' title to this land is severally contested. Not only so, but the bill itself, while averring title in them up to the line therein described, discloses that this claim is so involved in doubt and uncertainty as to necessitate its judicial determination, and the judgment of the court is invoked to that end. On the other hand, the answer roundly asserts that the lines of defendant's holding embrace all of the strip in controversy, and set up morover an adverse possession of such character as would vest title in him regardless of the true location of the original boundary. And in addition to all of this, the evidence is in irreconciliable and material conflict both as to the true boundary and as to the adverse prior possession of the defendant. The defendant had a clear right, secured to him by the constitution and effectuated by statutes, to have his claim of title thus indicated by the bill itself, as also asserted in the answer and supported by one phase of the evidence, passed on by a com-

[Ashurst v. McKenzie.]

mon law jury. The Chancery Court is without power, in the exercise of its jurisdiction to restrain irreparable trespasses, to determine a question of disputed title. Indeed, on a bill for such purpose, it confessedly determines no primary right, but, on the contrary, conserves and protects by its restraining processes only the enjoyment of such right as the party complaining may have at law. It can neither confer title nor take it away, nor the one or the other directly, as by a decree investing it in the complainants, or indirectly, as by perpetually enjoining the defendant to assert his claim at law. In all such cases, the only relief equity can grant in the first instance is by way of a temporary injunction of trespass, giving the parties opportunity to litigate the title in the courts at law, retaining the cause until the legal rights have been determined, or until the party, upon whom is the burden of the initiative, has made default in seasonably invoking a jurisdiction adequate to the adjudication of his claim, and then to dissolve the injunction and dismiss the bill if the complainant is cast or fails to proceed, in the legal forum, or to perpetuate the injunction, if the defendant is defeated, or fails to institute and prosecute his action at law.—*Kinder v. Jones*, 17 Ver. 109; *McMillan v. Ferrell*, 7 W. Va. 223; *Perry v. Parker*, 1 Woodb. & M. 280; *Eskridge v. Eskridge*, 51 Miss. 522; *Duvall v. Waters*, 1 Bland. Ch. 669; *Haigh v. Jaggor*, 33 Eng. Ch. 230; *Schoonover v. Bright*, 24 W. Va. 698; *Irwin v. Davidson*, 3 Ived. Eq. (N. E.) 311; *Echelkamp v. Schroader*, 45 Mo. 505; *Norris' Appeal*, 64 Pa. St. 280; *Long v. Kasebeer*, 28 Kan. 226; *Erhart v. Booro*, 113 U. S. 539; *Jerome v. Ross*, 7 Johns. Ch. (N. Y.) 315.

We are aware that in some cases of this kind in this court a disputed title has been determined on a bill to enjoin trespasses; but the power of the court so to do does not appear to have been questioned, nor its attention drawn to the considerations to which we have adverted; and in one of these it is said that the party complaining must show a clear legal or equitable title. In any view, they can not be considered authoritative so as now to bind us to a conclusion opposed to that stated above, and which we think is as sound in principle as it is overwhelmingly supported by the adjudications of other courts. See *Bouls v. R. R. Co.*, 55 Ala. 480; *Sullivan v. Rabb*, 86 Ala. 433. Of course, if there has been an adjudication of the title at law before bill filed, this will suffice; and some effort was made in this case towards averring and showing such prior decision here favorable to the complainants; but it is neither sufficiently averred nor proved that the question of title in controversy has ever been determined at law.

As was said in the strictly analogous case of *Echelkamp v. Schroader, supra*:  "It is unusual in cases like this, where the title itself comes in controversy, to grant a temporary injunction to await the event of an action at law to be prosecuted by the plaintiff [complainants].  But here the complainants are in actual possession, and therefore not in a position, nor have they any occasion, to sue.  The defendant is the proper party to bring an action and test the rights of the respective parties at law.  If he neglects to do this in a reasonable time, he will have no just grounds of complaint if the injunction is made perpetual against him in consequence of his own negligence."

The decree below is reversed, and a decree will be entered here modifying the injunction in accordance with this opinion. The cause is remanded to the Chancery Court, where it will stand over until title to the disputed land is adjudicated at law, or until the defendant R. T. Ashurst has had reasonable time to bring his action at law and has failed to do so.  "If he neglects to do this in a reasonable time, he will have no just grounds of complaint if the injunction is made perpetual against him in consequence of his own negligence."

The decree of the Chancellor establishing the boundary between the lands of complainants and those of defendant, and perpetually enjoining trespasses, &c., must be reversed; and this court, proceeding to render the decree the Chancery Court should have rendered, refuses and denies any relief by way of establishing such boundary, and awards a temporary injunction.

