John P. Moroney, Appellee, v. James P. Allman, Commissioner of Police, et al., Appellants.

Gen. No. 36,915.

MATCHETT, P. J., dissenting.

 Opin-
ion filed June 21, 1933. Rehearing denied July 6, 1933.

WILLIAM H. SEXTON, Corporation Counsel, for appellants; OTTO F. WEINER and WILLIAM V. DALY, Assistant Corporation Counsel, of counsel.

JOHNTRY & FITZGERALD, for appellee; JOHN H. JOHNTRY, JOHN O'C. FITZGERALD and GEORGE F. ORT, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

May 2, 1933, complainant filed his verified bill against James P. Allman, commissioner of police of Chicago, and other city officials, to restrain them from molesting, annoying or interfering with complainant in the operation of his business in the City of Chicago. The defendants filed their appearance, and it seems to be conceded that they were represented when complainant's motion came on for hearing before the chancellor; an order was entered as prayed for in the bill, defendants being restrained "until the further order of this court." And it is to reverse this interlocutory order that defendants under the statute prosecute this appeal.

The substance of the allegations of the bill, so far as it is necessary to state here, is that complainant is the lessee of premises in Chicago for which he is obligated to pay more than $3,000 as rent; that he conducted a restaurant and public place of amusement in the premises under a license issued by the City of Chicago from August 2, 1932; that the license was issued on March 15, 1932, "to keep a Public Place of Amusement and Dry Cabaret from the date thereof until the twelfth (12th) day of January, A. D. 1933"; that on August 2, 1932, the license was surrendered and exchanged for another license; that this second license authorized complainant to conduct his business in the premises until December 31, 1932; that there are 1,200 square feet on the first floor of the premises, with a seating capacity for about 250 persons, which is suitable for restaurant and cafe purposes, and about 400 square feet available for dancing; that food and soft drinks are served at tables; that at all times complainant conducted his business in an orderly manner and at no time was there any complaint made that the business was conducted improperly; that complainant laid out and incurred expenses of approximately $50,000 to improve the premises and render them proper for the conduct of such business; that he had a right to renew his lease for another year at a rental of $350 a month; that on or about January 12, 1933, he applied to the proper city officials for a renewal license for the ensuing year and paid therefor to the city collector $250, which sum is still retained by the collector; that he has complied with all the ordinances and laws in the conduct of his business and in the application for renewal of license; that his application was turned over to the commissioner of police for investigation, who retained it without objection until February 20, 1933, when the application was refused and the renewal of the license denied; that the commissioner of police and other officials advised the city collector "not to

issue a license of the character (requested) to John Moroney for the premises 8301 South Chicago Avenue, nor to any other person, for said premises''; that the building on the premises conforms in all respects to the ordinances of the city and is suitable for such business as is conducted by complainant.

It is further alleged in the bill that in March, 1933, complainant filed a petition against the city officials praying that a writ of mandamus issue commanding them to issue to him a license so that he might continue to conduct his business in the premises; that he alleged in his petition substantially the same facts as those alleged in his bill; that defendants joined issue in the mandamus case and the matter was heard before the court without a jury, a jury having been waived, and a finding and judgment were entered in that case awarding a writ of mandamus, from which they prosecuted an appeal to this court; that afterward, on or about April 15, 1933, certain city police officers came to complainant's place of business and demanded that he produce his license authorizing him to conduct the business; that he advised them of the facts in the matter but that the police thereupon threatened to close the place of business since complainant was operating without a license; that afterward complainant ''was served with an arrest notification'' and charged with operating a public place of amusement without a license, and he was required to appear in such matter before the municipal court of Chicago; that he was advised he must close his place of business since he had no license, and that police officials were stationed at the three entrances to his place of business, who denied entrance to complainant's patrons and stated that if such patrons did enter the premises they would be subject to arrest.

The temporary restraining order having been issued on the face of the bill, raises the question whether the bill was vulnerable to a general demurrer.

Defendants contend that the bill failed to state a cause of action because, if the complainant were entitled to a license, his remedy was by an action for a writ of mandamus and not in equity for a restraining order. In support of this the cases of *Ruban v. City of Chicago*, 330 Ill. 97; *Klever Karpet Kleaners v. City of Chicago*, 323 Ill. 368; *Grace Church v. City of Zion*, 300 Ill. 513; *Rockford Amusement Co. v. Baldwin*, 252 Ill. App. 1; *Vitagraph Co. of America v. City of Chicago*, 209 Ill. App. 591, and other cases are cited.

If the action for a writ of mandamus, being an action at law in which the parties are entitled to a jury trial (*Wilke v. City of Chicago*, 212 Ill. App. 414; *People of Illinois v. Czaszewicz*, 295 Ill. 11) furnished Moroney with a plain, adequate, complete and prompt remedy, it would deprive a court of equity of jurisdiction and the bill would not lie; but if the mandamus case did not afford a complete and adequate remedy, equity would take jurisdiction.

In the *Ruban* case (330 Ill. 97), a bill was filed to restrain the city from enforcing an ordinance regulating laundries. A demurrer was sustained and the bill dismissed. On appeal to the Supreme Court the decree was affirmed. In that case an ordinance required a person who desired to conduct a laundry to obtain a license. The complainant laundries apparently made no attempt to obtain licenses but contended that the ordinance was invalid. The court held their remedy was by mandamus. It is obvious that this case is not in point. In the instant case there is no contention that the ordinance requiring a license was invalid. A license had been obtained by complainant, as the ordinance provided, and he was seeking its renewal. Upon refusal of defendants to renew his license he filed a petition for a writ of mandamus, which was heard on its merits and the writ awarded, but the city appealed.

So in the *Klever Karpet Kleaners* case (323 Ill. 368), where complainants filed a bill for an injunction to

enjoin the city from enforcing an ordinance which required a license as a prerequisite to the conducting of a dry cleaning business on the ground that the ordinance was void. The court held the ordinance was valid. Obviously that case is in no way analogous to the case before us.

In the *Grace Church* case (300 Ill. 513), a bill was filed to enjoin the city from enforcing a building ordinance which required that a permit be issued authorizing the erection of a church building. In that case complainant began to construct a building without such permit. Afterward the plans of the church were submitted to the city officials, who refused the permit. The bill was dismissed and the Supreme Court affirmed the decree. It was contended that the ordinance was invalid and that there was an adequate remedy by mandamus to compel the issuance of a permit. The court said that complainant (p. 518) ''would not be justified in proceeding with the erection of a building without the permit, which the city had power to require and which the mayor had no discretion to refuse if the ordinance was complied with. Equity would not interfere, because of the existence of a complete and adequate remedy at law.'' In that case the ordinance required that a permit be obtained before beginning to construct a building. This was not done. But it was contended that the ordinance was invalid. It is clear that the facts in that case are in no way similar to the facts in the case before us.

In the *Rockford Amusement Co.* case (252 Ill. App. 1), it appeared that the amusement company had obtained a judgment awarding a writ of mandamus commanding the officials of the county to issue a license to the amusement company to operate a dance hall and road house. The defendants in that case appealed from the judgment which the court in its opinion said was then pending before them on appeal. After the appeal was perfected the amusement company filed its

bill for an injunction to restrain the county officials from interfering with the complainant in conducting its dance hall and road house ''until the determination of the appeal in that case.'' An order was entered by the trial court granting a temporary injunction which was reversed on appeal by the Appellate Court. The court said that the remedy by mandamus was complete and adequate, that the complainant could not operate a dance hall and road house without a license, which the law required, and since the remedy by mandamus was complete and adequate, equity was without jurisdiction. This opinion was handed down February 21, 1929. Six days prior to that time the same court handed down an opinion in the mandamus case where the judgment of the trial court awarding the writ was affirmed. (251 Ill. App. 599.) In the latter case it appeared that the amusement company was organized as a corporation in February, 1928; that Thomas W. Milner was the president and general manager of that company, and before the incorporation Milner was the owner of and operated a dance hall and cafe in Gilford township, Winnebago county; that May 11, 1927, Milner applied for a license to operate a dance hall at that place and that a license was granted to him by the county officials; that June 18, 1927, the building was destroyed by fire and immediately afterward Milner began to rebuild the dance hall and later completed it, after which he conducted the dance hall until February 21, 1928, when the corporation was formed; that the license issued to Milner would expire May 11, 1928, and in anticipation of such expiration the corporation applied for a renewal of the license. The petition alleged that the license was denied because the defendants ''had made a rule, and had adopted a policy of refusing all dance hall permits in Winnebago county, and were following said rule and policy.'' As stated, the trial court awarded the writ of mandamus and its judgment was affirmed by the Appellate Court. In

that case the corporation was applying for its license for the first time although theretofore the president of it, acting in his individual capacity, had had a license to conduct his business at the same place. In that case there was no showing that the defendants in the mandamus case were violating the judgment of the trial court in awarding the writ, while in the instant case complainant was applying for a renewal of the license which had theretofore been issued to him. And after he had obtained a judgment of the trial court awarding him a writ of mandamus, the defendants appealed and shortly thereafter were proceeding to stop complainant from continuing his business in which he had a large investment. So that the facts in that case are not entirely analogous to those in the case before us. In the opinion rendered by the court in the injunction case (252 Ill. App. 1), the case of *Grace Church v. City of Zion, supra,* is cited. From what we have said, we think it clear that the *Grace Church* case is not in point. The court there also cites the case of *Vitagraph Co. v. City of Chicago,* 209 Ill. App. 591. In that case an interlocutory order was entered restraining the city officials from interfering with the exhibition of a moving picture film "until the final adjudication of an appeal from a judgment in a mandamus proceeding awarding the writ to compel the issuance of a permit for such exhibition." The court there stated that the substance of the complainant's right to relief in equity was that it had the right to exhibit the picture following the advertising of it and to prevent complainant from doing so would result in great financial loss. The court there quoted from *Rees v. City of Watertown,* 19 Wall. (U. S.) 107, as follows: "The remedy is in law and in theory adequate and perfect. The difficulty is in its execution only. The want of a remedy and the inability to obtain the fruits of a remedy are quite distinct." The court then cites the cases of *Klinesmith v. Harrison,* 18 Ill. App.

467; *City of Chicago v. O'Hare,* 124 Ill. App. 290. Continuing the court said (p. 593): "Complainant here resorted to such remedy and obtained the writ. The city or its proper officer, exercising an unquestioned right, appealed. It is conceded such appeal operated as a *supersedeas.* Manifestly, to avoid its consequence, this proceeding was instituted for the injunctive relief given which operates to nullify the effect of the *supersedeas* and to prevent an enforcement of the city's ordinances against appellees." The court also said that no property right was involved, because plaintiff had been deprived only of the privilege which the municipal authorities might grant or withhold, citing *People v. Cregier,* 138 Ill. 401.

In the *Cregier* case it was sought to compel Mayor Cregier of Chicago to issue a license to keep a dram-shop in Hyde Park. In that case it appeared that before Hyde Park was annexed to Chicago it had enacted an ordinance to prohibit the operation of dram-shops in certain districts as the village officials might determine. It was contended that the ordinance was unreasonable and invalid, but the Supreme Court sustained the ordinance. As stated by the court in the *Vitagraph Co.* case, the ordinance involved in the *Cregier* case authorized the officials in their discretion to grant or withhold dram-shop licenses. It is obvious that in such case the refusal to grant one a license to conduct a dram-shop in Hyde Park did not deprive him of any right, for he had no such right; while in the instant case, if complainant complies with all the laws and ordinances he is entitled, as a matter of right, to a license. Under such an ordinance the city officials cannot arbitrarily withhold the license as they see fit. *Zanone v. Mound City,* 103 Ill. 552; *People v. Busse, Mayor,* 231 Ill. 251. In the *Vitagraph* case complainant was applying for a license, not for the renewal of one, such as is the fact in the case before us.

We are of the opinion that in the instant case the complainant had a large personal property right involved. He had a large investment, $50,000, and a valuable lease which he had the right to renew. He was conducting his business in a proper manner. He had conducted the same business in the same premises under a prior license issued by defendants, which he sought to renew. No complaint is made in the record before us that the business was not conducted in a lawful manner. On the contrary, the allegations of the bill are that the business was conducted in accordance with all laws and ordinances, and that no complaint had been made by anyone that the business was not properly conducted. We are clearly of the opinion that complainant's remedy by mandamus was wholly inadequate. This is demonstrated by the fact that complainant, when the license was refused him, filed his petition for a writ of mandamus, and although there was a hearing on that matter on the merits and the writ was awarded, the city appealed, as it had a right to do, yet the officials are insisting that complainant cease conducting his business because he had no license; and it is obvious that such business if closed even for a short period would be practically ruined. The remedy at law was clearly inadequate. If defendants' contention that complainant had an adequate remedy at law by mandamus were sustained, the maxim *ubi jus ibi remedium* would be wholly meaningless and farcical. It having been adjudicated in the mandamus proceeding that complainant was entitled to a license, equity is not so feeble as to fail to give him relief and prevent the ruination of his business pending the determination by this court of the appeal of the city from the judgment in the mandamus case. And there is abundant authority to sustain this contention. The balance of convenience or the relative inconvenience to be caused the parties gives equity jurisdiction. It

is the law that where the complainant's "right is doubtful or his title is in dispute a perpetual injunction cannot be obtained until the doubt is removed by a proper proceeding and the right made certain; the only proper relief which may be granted in such cases being a temporary injunction maintaining the *status quo* until the right or title in question is established.

"It is not sufficient ground for refusing a preliminary injunction that it is not absolutely certain that complainant has the right that he claims or that the injury feared will occur; and even though complainant's right to permanent relief is doubtful, it may be proper to maintain the *status quo* pending the determination of his right, the issuance of a temporary injunction in such cases depending chiefly upon the relative inconvenience to be caused the parties. Thus where there is a prospect of irremediable injury, even though the title is disputed, a temporary injunction may issue at once, without waiting until a trial at law is had. The injunction may be granted, although an action at law has not been commenced, and the complainant or defendant may be ordered to institute a suit at law immediately." 22 Cyc. 750–752; see, also, 16 Am. & Eng. Ency. of Law, 2nd ed., p. 363; *Erhardt v. Boaro,* 113 U. S. 537; 32 Corpus Juris, par. 17, pp. 38–39; *Ashurst v. McKenzie,* 92 Ala. 484; *Ches. & Ohio Canal Co. v. Young,* 3 Maryland, 480; *Wood v. City of Brooklyn,* 14 Barb. 425; *Bishop v. Baisley,* 28 Oregon, 120; *Kane v. Vanderburgh,* 1 Johnson Chancery Rep. 10; *Lodor v. McGovern,* 48 N. J. Eq. 275; *Freer v. Davis,* 52 W. Virginia, 1; *Griffith v. Hilliard,* 64 Vermont, 643; 18 Eng. Ch. Rep. (4 M. Y. L. N. E. & C.) p. 298.

In 16 Am. & Eng. Ency. of Law, p. 363, it is said: "On an application for an interlocutory injunction the court will always consider the balance of convenience;

in other words, it will consider whether a greater injury would be done by granting an injunction than would result from a refusal."

In *Erhardt v. Boaro* (113 U. S. 537), it was held that "where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate" by the person in possession, and the property is in litigation in an action at law, an injunction will issue to prevent the mischief. In that case a suit in equity ancillary to an action for the possession of a mining claim was brought to restrain the commission of waste by the defendants pending the determination of the action at law. The bill prayed that the defendants be restrained "from mining on the claim, or extracting ore therefrom, or removing any ore already extracted, until the final determination of the action at law." A preliminary injunction was ordered but after trial of the action the judgment being in favor of the defendants, the injunction was dissolved and the bill dismissed. The court there said (p. 538): "It was formerly the doctrine of equity, in cases of alleged trespass on land, not to restrain the use and employment of the premises by the defendant when the title was in dispute, but to leave the complaining party to his remedy at law. A controversy as to the title was deemed sufficient to exclude the jurisdiction of the court. In *Pillsworth v. Hopton,* 6 Vesey, 51, which was before Lord Eldon in 1801, he is reported to have said that he remembered being told in early life from the bench, 'that if the plaintiff filed a bill for an account and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court as to the injunction.' This doctrine has been greatly modified in modern times, and it is now a common practice in cases where irremediable mischief is being done or threatened, going to the destruction of the substance

of the estate, such as the extracting of ores from a mine, or the cutting down of timber, or the removal of coal, to issue an injunction, though the title to the premises be in litigation. The authority of the court is exercised in such cases, through its preventive writ, to preserve .the property from destruction pending legal proceedings for the determination of the title.'' The court held that as a judgment in the action at law in favor of the defendant had been reversed, the injunction should be restored.

In *Ashurst v. McKenzie, supra* (92 Ala. 484), it was held that where each party asserts a legal title to land, and the defendant asserts prior possession in himself long enough to confer a title under the statute of limitations, he will be allowed a reasonable time to assert and maintain his title by an action at law before an injunction will be issued.

In *Chesapeake & Ohio Canal Co. v. Young,* 3 Md. 80, it was held that where title to property is in dispute, a temporary injunction is sometimes granted until the title is tried at law.

In *Wood v. City of Brooklyn,* 14 Barb. 425, the court said (p. 433): ''The question is, whether the considerations I have mentioned entitle the plaintiff to an injunction until his case can be decided after a full investigation. So far as it relates to any matters other than an infringement of his rights under his license, I cannot interfere. . . . But the plaintiff presents a different case, when he complains of the interruption to his lawful pursuits. He alleges that the business by which he earns a livelihood for himself and his family, is seriously and constantly injured; that he apprehends from the course pursued by the officers of the city, that he may be illegally arrested on a Sunday, while engaged in his lawful pursuits, and confined, without the privilege of procuring bail, until the next day, and then be subjected to a hasty trial, without the benefit of a constitutional privilege, and all under

an illegal ordinance. For some of these wrongs the law would afford him adequate redress, but no sufficient compensation could be made for family destitution or disreputable imprisonment. The defendants must be enjoined from enforcing so much of their ordinance," etc.

In the instant case plaintiff was threatened with arrest and his patrons were ordered not to go into his establishment. He has an adjudication in the mandamus case which was tried on its merits, that he is entitled to his license but on account of the delay in getting his case before the Appellate Court and having it disposed of, he has no adequate relief unless the officials are enjoined until the mandamus case is disposed of.

In *Bishop v. Baisley,* 28 Ore. 120, it was held that equity will interfere by injunction to restrain a continuing trespass on a mining claim by the removal of valuable ores, at the suit of one claiming to be the owner of the realty, though out of possession, where an action at law is pending to determine the title, and that in the same cases the trespass would be enjoined even though no action at law had been commenced. That the injunction would be only temporary pending the trial of the action at law to determine the title.

In *Kane v. Vanderburgh,* 1 Johnson Ch. Rep. 10, it was held that an injunction to stay waste would be granted although no suit at law was then pending to determine the title to the land on which the waste was being committed. Chancellor Kent was a member of that court.

In *Lodor v. McGovern,* 48 N. J. Eq. 275, it was held that the owner of land abutting on a street which was being paved in an imperfect manner had a standing in equity to restrain the common council of the city from paying for the work in which the landowner would be assessed for part of the costs; that the injunction would be only temporary until the contractor's

claim against the city could be determined by a jury in an action at law. The court there said (p. 280): "We are further of opinion that the city should be enjoined from making such payment . . . until such injunction shall have been dissolved or the appellant shall have established his right thereto by a suit at law."

And the Supreme Court of West Virginia in *Freer v. Davis,* 52 W. Va. 1, held that a court of equity had no jurisdiction to settle the title and boundaries of lands between adverse claimants but when it appeared that irreparable mischief was being done to the real estate, such as the extraction of gas and oil, and the title of the land being in dispute a court of equity would enjoin the trespass pending the determination of the title to the land in a court of law. The court there discusses the case of *Erhardt v. Boaro,* 113 U. S. 537, *supra,* and quotes from the opinion in that case.

To the same effect is *Griffith v. Hilliard,* 64 Vermont 643, where it was held that a court of chancery would enjoin the cutting of timber upon premises at the instance of one who claimed title to the land before the title had been established in a court of law, and in support of this holding the court refers to *Erhardt v. Boaro,* 113 U. S., *supra.*

In *Harman v. Jones,* 18 Eng. Chanc. Rep. (4 Mylne & Craig) 298, it was held that the intervention of a court of equity by interlocutory injunction between two parties who are at issue upon a legal right, is solely to protect the property in dispute and until the legal right shall have been determined. In that case the defendant was enjoined "until the further order of the court." The Lord Chancellor in delivering the opinion of the court said (p. 300): "The proper office of the court, upon an application of this kind, is not to ascertain the existence of a legal right, but solely to protect the property, until the right can be deter-

mined by the jurisdiction to which it properly belongs. It is the duty of this court to confine itself within the limits of its own jurisdiction; and, therefore, it is a fundamental error in an order of this kind, to assume finally to dispose of legal rights, and not to confine itself to protecting the property pending the adjudication of those rights by a court of law.'' This opinion was filed in 1841.

From the foregoing authorities we are of opinion that where parties are at litigation in an action at law, a court of equity may, in a proper case, issue an injunction to restrain one of the parties from practically destroying the substance of the action until the action is disposed of.

So, in the instant case, it appearing from the allegations of the bill which, on this record are admitted to be true, that complainant is seeking a renewal of his license; that he has complied with all the law and ordinances; that he is conducting his business properly; that upon refusal of the license by the city officials he filed a petition for a writ of mandamus, and upon a hearing of the merits of that case judgment was entered awarding him the writ from which the city prosecutes an appeal, and pending the disposition of the appeal threatened to forcibly close up complainant's business, it is obvious that he has no adequate remedy at law because if his business is closed up it will be substantially destroyed; in such case equity will intervene to enjoin the officials until the determination of the mandamus proceeding.

The order of the superior court of Cook county appealed from is affirmed.

*Order affirmed.*

McSurely, J., concurs.
Matchett, P. J., dissents.