## City of Chicago, et al. v. P. J. O'Hare.

### Gen. No. 12,859.

1. INTERLOCUTORY ORDERS—*right of municipality to appeal from, without giving bond.* A municipality is authorized by virtue of section 72 of the Practice Act to appeal from interlocutory orders granting injunctions without the giving of a bond. The act providing for appeals from such interlocutory orders does not by implication repeal said section 72.

2. SALOON LICENSE—*when protest against renewal of, conforms to ordinance.* Where an ordinance provides that the renewal of a saloon license granted pursuant to frontage consents shall not be made if "one-fourth of the property owners or *bona fide* householders, persons and firms doing business upon both sides of the street in the block upon which the said dram-shop has its main entrance" objects, it is not necessary that one-fourth of such property owners in the entire block shall sign such protest, but only that one-fourth of those on both sides of the street in which the saloon is located.

3. SALOON LICENSE—*acceptance of fee by mistake does not confer right to.* Where a municipal officer accepts the fee for the renewal of a saloon license by mistake and upon discovering such mistake notifies the party paying the same that the money is held subject to his order, no right to a license is thereby conferred.

City of Chicago v. O'Hare.

4. Saloon license—*remedy where municipality improperly refuses*. Where a municipality improperly refuses to issue a saloon license, the remedy is by *mandamus*.

5. Injunction—*when does not lie*. The threatened trespass by municipal authorities cannot be enjoined where such trespass if committed would be wholly in connection with the due and proper enforcement of the law.

Injunction proceeding. Appeal from the Superior Court of Cook County; the Hon. Theodore Brentano, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed. Opinion filed January 30, 1906.

**Statement by the Court.** This is an appeal from an interlocutory order granting an injunction. Appellee's bill upon which the injunction was issued sets forth that for more than seven years he has been a dram-shop keeper on the northwest corner of Prairie avenue and 51st street located in that part of the city of Chicago formerly included within the village of Hyde Park annexed to Chicago in 1889; that there is an ordinance of said former village relating to dram-shops which is in part as follows:

"Any person who shall desire to obtain a license to keep a saloon or dram-shop shall in addition to the requirements now provided by ordinance, present his application in writing to the Village Comptroller for such license, in which shall be stated the name of the person or firm to whom the license is to be issued and the place where such saloon or dram-shop is to be kept, which application shall be signed by a majority of the property owners, according to frontage, on both sides of the street in the block in which such dram-shop is to be kept and shall also be signed by a majority of the *bona fide* householders and persons or firms living in, or doing business on each side of the street in the block upon which such dram-shop shall have its main entrance.

"Provided, however, that any person or firm who shall have made application as aforesaid, and received a license to keep a dram-shop shall not be required to present an application as above, in order to obtain a renewal of the license, to himself or firm unless at least one-quarter of the property owners or *bona fide* householders, persons and firms doing business

upon both sides of the street in the block upon which the said dram-shop has its main entrance, shall file with the Village Comptroller at least thirty (30) days prior to the time for the renewal of such license, a notice stating that the signers thereof object to the granting or renewing of the license to said person or firm. Adopted, approved and filed April 4, 1889."

Complainant alleges that he has always complied with the provisions of the ordinance and when a protest has been made against him he has always obtained the necessary signatures as required by the ordinance; that he has made application as required from time to time and has always heretofore been able to receive the license to keep such dram-shop; that May 1, 1904, he made application to the city and a license was granted which was renewed for the various periods of the year ending May 1, 1905; that prior to May 1, 1905, being the day for renewal of his said license, a protest was filed with the mayor and collector of the city of Chicago against such renewal; that the signatures to said protest purport to represent only property on 51st street between Prairie and Indiana avenues and that in order to be valid, any protest should contain the signatures of one-fourth of the property owners by frontage on both sides of all the streets surrounding the block in which his dram-shop is located; that is, his dram-shop being located on the northwest corner of 51st street and Prairie avenue, and that block being bounded on the south by 51st street, on the east by Prairie avenue, on the north by 50th street and on the west by Indiana avenue, any protest against the renewal of complainant's license should be signed by at least one-quarter of the property owners by frontage or in numbers on both sides of Prairie avenue between 51st and 50th streets, both sides of 50th between Prairie and Indiana avenues, both sides of Indiana between 50th and 51st streets and both sides of 51st street between Indiana and Prairie avenues; that said protest is worthless because not so signed and is therefore no legal protest against the renewal of complainant's license.

It is further alleged that complainant has paid to the

city $166.67 as required by law for the renewal of the said license for the period beginning May 1, 1905, and holds the collector's receipt therefor, and that he has filed with the city a bond with good and sufficient surety as required by law for the renewal of the license, which bond has been approved; that nevertheless the mayor and city refuse to grant him a renewal license and threaten to interfere with his said business, which will do him irreparable injury and will execute such threat unless enjoined. He prays therefore for an injunction.

Subsequently supplemental bills were filed, the first alleging in addition to the former allegations that about September 1, 1905, complainant offered to pay and tendered to the city $166.67 for a renewal of license for the period from September 1, 1905, and tendered a bond which were refused. The second supplemental bill alleges that November 1, 1905, complainant paid to the city $166.67 for the then current license period and tendered a bond, which payment and bond were accepted.

The answer of the defendants to the last of these supplemental bills admits the payment November 1, 1905, of $166.67, but states that the payment was accepted by the collector of the city by inadvertence and mistake arising from the vast number of licenses and the many duties of the collector in connection therewith, and that complainant was notified of the mistake and informed that the money so paid was held subject to his order, and the fact is alleged to be that it is so held.

Appellants by their answers admit that complainant's dram-shop is located in the former village of Hyde Park, the existence of the Hyde Park ordinance recited in the bill, and avers the existence of a certain other ordinance of Hyde Park adopted prior to annexation, now in force in said portion of Chicago formerly a part of the village of Hyde Park, which provides as follows:

"Section 10. No person shall receive a license to keep or maintain a dram-shop or saloon within the limits of the Village of Hyde Park except upon payment, in advance to the

Village Comptroller, to be by him paid into the village treas-
ury, of a sum at the rate of $500 per annum, for each dram-
shop or saloon, payable in three equal installments on the
first day of April, August and December of each fiscal year.
Every license so granted, unless sooner revoked, shall expire
with the end of the current fiscal year. Such license shall
be dated as of the day of application, and no person shall be
deemed to be duly licensed to whom a license has not been
actually issued as herein provided.".

It further appears by the answers that there are other
ordinances of the city of Chicago applicable to licenses to
keep a saloon or dram-shop, which require the applicant to
furnish satisfactory evidence of good moral character, pro-
vide as to fees and periods of payment, prohibit wine-rooms
or private apartments, regulate attendance as to numbers
and sex, and provide penalties for violations among which are
revocation of license, and prohibition of renewals for two
years after conviction. It is admitted that a protest was
filed with the city authorities against the renewal of com-
plainant's license, by owners of 162 feet of property front-
ing on 51st street between Prairie and Indiana avenues,
representing more than one-fourth of the frontage on both
sides of said street between said avenues, on which street
it is alleged was the main entrance of complainant's saloon,
and it is admitted that the mayor refused to issue a renewal
of complainant's license on account of said protest and also
because the character of complainant is not satisfactory to
him as a person to conduct a dram-shop, he having been
heretofore convicted of a violation of the wine-room ordi-
nance of the city of Chicago adopted December 9, 1901; and
it is stated that the alleged payment by complainant of
$166.67 is not such payment as is required by law for re-
newal of a dram-shop license. Defendants deny that said
protest does not show that it was signed by one-fourth of
the property owners in numbers as required by law, and aver
that they are informed and believe and charge the fact to be
that complainant's former license for the year 1904 was it-
self improperly issued, for the reason that the application

filed by him did not contain a majority of the *bona fide* householders, persons or firms living in or doing business on each side of 51st street in the block where at the time complainant's dram-shop had its main entrance, but that certain persons signing as *bona fide* householders and persons or firms were not such.  Defendants deny the allegations of the bill, as to irreparable injury, loss of livelihood, etc., and aver that a court of equity is without jurisdiction to issue the injunction prayed for.

Upon the bill and answers a preliminary injunction issued as prayed.

John W. Beckwith, Corporation Counsel, for appellants; James Hamilton Lewis, Corporation Counsel, and Church, McMurdy & Sherman, of counsel.

Harris F. Williams, for appellee; Edwin Bebb and Eldon M. Votaw, of counsel.

Mr. Justice Freeman delivered the opinion of the court.

There is in this case a preliminary motion to dismiss the appeal because, it is said, appellants did not file an appeal bond in accordance in that respect with the provision of the statute relating to "Appeals from Interlocutory Orders." (R. S. Chap. 22, Sec. 52.)  It is there provided that "the party taking such appeal shall give bond to be approved by the clerk of the court below, to secure costs in the Appellate Court."  Appellee's contention is that this statute is "to be strictly and literally construed," and that the only effective method in which appellants could take an appeal under that statute "is the filing of an appeal bond with the clerk of the court below."  We cannot concur in this view, in a case where appellants are the city, a municipal corporation, its mayor and chief of police, the two latter public officers "defending in their official capacities," each and all of whom are allowed by section 72 of the Practice Act (R. S.) "in all cases of appeal or writ of error by them from any inferior court to any higher court to prosecute the same without giving bond."  We are of opinion that by said section 72 "any

writ of error or appeal" then or thereafter provided for may
be granted, so long as the section continues in force, "with-
out requiring any bond to be given as required by law, as
in other cases." It is true as said in Harding v. Harding
Incandescent Co., 98 Ill. App., 141–142, cited by appellee's
counsel that "the right of appeal is a matter of statutory
creation, not a common law right. Hence conformity to the
statute is essential and a lack of it jurisdictional." The
procedure in the present case is in precise conformity to the
section of the Practice Act referred to, and the provision re-
lating to appeals from interlocutory orders is we think one
of those "other cases" referred to in section 72 of the Prac-
tice Act in the phrase above quoted therefrom. There is
nothing repugnant nor inconsistent in either of the acts with
the other and neither is to be deemed repealed by implica-
tion. People v. Harrison, 185 Ill., 307–313.

While the act allowing appeals from interlocutory orders
is later than the section of the Practice Act referred to, the
later act does not repeal the former either in words or ef-
fect. It contains no provision to the effect that all laws and
parts of laws in conflict with it are thereby repealed, and
so far as the Practice Act is or may seem to be in conflict,
it must be regarded as an exception in the matter of giving
bond on appeal in favor of the municipal corporations and
other parties therein named.

Under the annexation proceedings by which Hyde Park
became a part of the city of Chicago the ordinances of the
village of Hyde Park here in controversy were continued in
force and operative in the territory in question. People v.
Cregier, 138 Ill., 401. It is urged in behalf of appellee that
the protest or objection against the renewal of appellee's
license was insufficient in that it contained only the signa-
tures of one-quarter of the property owners on 51st street
between Prairie and Indiana avenues and not the signa-
tures of one-quarter of the property owners on all the streets
bounding the block in which appellee's dram-shop on 51st
street is located. Hence it is said that the protest did not
comply with the terms of the ordinance relating to such ob-

City of Chicago v. O'Hare.

jection. In Harrison v. The People, 195 Ill., 466–469, the ordinance now in controversy set forth in the preceding statement was construed, and it was held that the first of its provisions requiring an application for a license under said ordinance to "be signed by a majority of the property owners according to frontage on both sides of the street in the block in which such dram-shop is to be kept," required the signatures of a majority of such property owners on both sides of the four streets bounding said block in which the dram-shop is to be kept; whereas the second provision requiring that such application "shall also be signed by a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block upon which such dram-shop shall have its main entrance" was conceded to have been satisfied by the *bona fide* signatures of the persons named, living in or doing business upon each side of that one of the four streets bounding the block, upon which the dram-shop shall have its main entrance. This last mentioned provision is substantially repeated in the proviso of the ordinance, the meaning of which proviso is now questioned. Therein it is "provided" that the applicant for a renewal of a license shall not be required to present a new application in order to obtain such renewal, unless when, as in the present instance, objection to the renewal is filed within the time specified, which shall be signed by "one-quarter of the property owners or *bona fide* householders, persons and firms doing business upon both sides of the street in the block upon which the said dram-shop has its main entrance." The requirement as to signers to such objection was we think satisfied when the objection was, as the bill seems to concede, signed by a quarter of the property owners or *bona fide* householders, persons and firms doing business upon both sides of 51st Street between Prairie and Indiana avenues, upon which street the complainant's dram-shop has its main entrance. In Patterson v. Johnson, 214 Ill., 481–492, it is said that the word "block" may mean a "square" or it may mean "the part of a street which lies between two cross streets," and the latter is the meaning

which must be given to it in the proviso in controversy and which appears to have been given to the similar language employed in the prior part of the ordinance in the case of Harrison v. The People, *supra*. (See bottom of page 469, also *Idem* 97th Ill. App., 421–429, where the facts as to the signatures in that case are stated.)

We deem it unnecessary to consider at length the other points presented in the briefs of counsel, since we are of opinion that the bill in equity cannot be maintained and that upon the face of the bill the injunction prayed for and issued by the Superior Court is unwarranted and erroneous. It is evident from what has been said that in our opinion the objection or protest which according to the bill was filed with the proper authorities against the renewal of complainant's license, was valid under the provision of the ordinance applicable. It became necessary therefore that complainant present a new application in order to obtain a renewal of license, to be accompanied by signatures as required by the construction given to the phraseology of the ordinance by the Supreme Court in People v. Harrison, *supra*. Until this was done the complainant was not entitled to any license after the expiration of the time in which his former license had been operative. It appears upon the face of his bill that without a license to keep a dram-shop, he is seeking by bill in equity to compel the proper authorities of the city to permit him to conduct a dram-shop in violation of laws and ordinances the validity and force of which are not questioned. The prayer of the bill is that "defendants may be enjoined and restrained from in any way interfering with the conduct of complainant's business" in keeping said dram-shop. Appellants by their answer deny that a court of equity has jurisdiction in the case and allege that complainant has an adequate remedy at law for the alleged injurious action charged against appellants and of which he complains. It is true complainant states he has filed his bond and paid a license fee for one of the annual periods, but it is undisputed that the license fee so paid was accepted by the collector of the city by inadvertence and mis-

take of which complainant was immediately notified and that he was informed the payment so made is held subject to his order.    Such acceptance by mistake was in fact and law no acceptance and gave complainant no right to receive a license. It is conceded in appellee's brief that he had a remedy at law, but insisted that such remedy was not adequate.    Having no license and having shown no right to one, complainant cannot complain of injury whether irreparable or not for which the law and complainant's own conduct are responsible.    There is nothing in the bill tending to show any illegal, unlawful or improper acts of the defendants in the premises.    Under such circumstances, as said in Pom. Eq. Jur., vol. 3, p. 376, "an injunction will not be granted in general to restrain persons from acting as public officers." Appellee's counsel base their argument in support of the injunction upon an assumption that the city and its officers, defendants herein, are threatening to commit trespass upon complainant's private and property rights.    The bill presents no such case.    The refusal of a license does not deprive anyone of a personal or property right.    People v. Cregier, *supra*.    The injunction restrains appellants from enforcing the law and nothing more.    A court of equity has no such jurisdiction.    Fletcher v. Tuttle, 151 Ill., 41–53, *et seq.;* High on Inj., section 1242, vol. 2; Prather v. The People, 85 Ill., 36, cited by appellee's counsel is not in point.    The facts here are very different.    In no proper sense has appellee complied with the ordinances applicable, either in paying the license fee or otherwise.    If he had brought himself within the provisions of the ordinance so that the right to a license was not doubtful and appellants had still refused him a license the remedy by mandamus was open to him.    People v. Crotty, 93 Ill., 180–186; Zanone v. Mound City, 103 Ill., 552–558; Swift v. Klein, 163 Ill., 269–276.

The injunction has the effect of permitting appellee to continue to conduct his dram-shop without a license and in violation of law.    It is clearly erroneous, and the injunction order will accordingly be reversed.

*Reversed.*