(No. 14254.—Decree affirmed.)

THE GRACE MISSIONARY CHURCH, Appellant, *vs.* THE CITY OF ZION *et al.* Appellees.

*Opinion filed December 22, 1921.*

1. MUNICIPAL CORPORATIONS—*when building ordinance does not give arbitrary power to mayor.* A building ordinance which prescribes certain specifications before a permit will be issued for the erection of any building does not give arbitrary power to the mayor merely because it provides that he "shall institute measures and prescribe such rules and regulations as shall secure the careful erection and inspection of all buildings while in process of construction, alteration, repair or removal and the strict enforcement of the ordinances of the city in reference thereto," as no power is thereby given the mayor to prescribe rules beyond the scope of the ordinance.

2. MANDAMUS—*mandamus is proper remedy to secure building permit if the ordinance is complied with—injunction.* Compliance with the requirements of a building ordinance entitles the proposed builder to a writ of *mandamus* to compel the issuance of the permit provided for in the ordinance but will not entitle him to go on with the work without the permit and then seek an injunction to prevent the city's interference with the building, even though the building will be damaged if the work is stopped and though the denial of the permit was wholly unwarranted.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

JOHN D. POPE, and ALBERT L. HALL, for appellant.

THEODORE FORBY, and CHARLES P. BARNES, for appellees.

300—33

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The demurrer of the appellees, the city of Zion and W. Hurd Clendenin, mayor, to the bill of the appellant, the Grace Missionary Church, filed in the circuit court of Lake county, praying for an injunction against the city and mayor from enforcing against the appellant a building ordinance of the city and from interfering with the erection of the appellant's church building, was sustained and the bill was dismissed for want of equity. An appeal to this court was prayed for and allowed upon a certificate of the chancellor that the public interest required the appeal to be taken to this court, and it was perfected in accordance with the order.

The bill alleged that on June 23, 1902, an ordinance of the city was passed regulating the erection, construction, alteration, repair, removal or safety of buildings, and a copy of the ordinance was annexed to the bill as an exhibit. It contains thirty-five sections and numerous provisions relating to materials and methods of construction, none of which are alleged to be illegal or not within the power of the city to make and enforce. It provides that before proceeding with the erection, enlargement, alteration, repair or removal of any building a permit must be obtained from the mayor, to whom application must be made, accompanied by such plans and specifications as may be necessary to show that the proposed work is to be done in a safe and proper manner and in conformity with the ordinance. If the mayor approves the plans and specifications he is required to issue a permit and to affix his official stamp upon the plans and specifications, and if he shall so require the applicant is to file true copies of so much of the plans and specifications as may be required to illustrate the features of construction and equipment which may require special inspection and supervision during construction or afterwards. Section 13 is

as follows: "Until fire limits are established, frame buildings not exceeding 35 feet in height from the sidewalk to the highest point of the roof may be constructed. If the basement is of brick or stone the height may be extended up to 45."

The facts alleged in the bill and admitted for the purposes of the demurrer to be true are as follows: Ten years ago the complainant obtained from the city of Zion a permit to erect a church building on its property, to be a one-story building about 50 feet in height, to rest upon a cement foundation with walls about eighteen inches thick. Under the authority of the permit the complainant proceeded to erect the building but was able to construct only the foundation because of lack of funds, and it constructed a temporary roof over the foundation and basement and used the latter for religious services up to the filing of this bill. In the spring of 1921 the complainant was desirous of completing the church building and adding a wing resting on a concrete foundation, to be used as a gymnasium, and the greatest height of the building was to be 50 feet and three inches. On May 4, 1921, the complainant presented to the city an application for a permit to erect the wing, together with plans and specifications of the work to be done, and paid a fee of $25. The city clerk notified the complainant that it could proceed with the erection of the wing and the completion of the church building, and the only objection that the city might raise as to the plans submitted was in respect to the height of the church. The complainant proceeded with the erection of the wing and the completion of the church building under that verbal permission and continued the work from May 6, 1921, to May 26, 1921. The mayor requested further plans and specifications, which were delivered as requested. The plans and specifications for the building were prepared by a competent licensed architect and were presented to the mayor, but he refused to issue a permit and on May 24, 1921, ordered the com-

plainant to cease work on the building. James J. Craig, building inspector for the city, appointed by the mayor, verbally approved the plans and specifications for the church building and addition thereto except in so far as they conflicted with section 13 of the building ordinance, and reported to the mayor that he had approved of the plans and specifications except as to section 13. On June 4, 1921, the complainant made a further request for a permit, but it was refused and ten workmen engaged in work on the building were arrested, and having been released on bail returned to their work, when they were again arrested and lodged in jail until evening. On June 8, 1921, the complainant made a further application to erect the church building, to be a stucco frame 90.6 by 105 feet, one story high, to rest on concrete and brick foundation, as shown by plans and specifications submitted with the application and out of the material stated, but the application was refused. On June 21, 1921, the complainant inquired of the mayor whether a permit would be granted if the height of the wing to be added to the church building was lowered to 45 feet, so as to comply with section 13, and the response of the mayor was, "It does not matter; that is not the point; those fellows think they can do as they please, and we'll show them different." There was, and had been for some time, a church organization in Zion known as the Christian Catholic Apostolic Church of Zion, with Wilbur Glen Voliva as its overseer, which included in its membership about fifty per cent of the people in the city. Voliva dominates and controls the city government, and all of the city officers are members of his church and the mayor is his employee. Voliva announced that he will drive from the city of Zion all persons who are not members of his church, and announced from his pulpit in the city that he had stopped the building of the church and would keep it stopped. On October 13, 1913, an ordinance was passed establishing fire limits for the city.

The only ground upon which it is alleged that the ordinance is invalid is that under section 4 the mayor has arbitrary power, which may be exercised in the interest of a favored few. The section is as follows: "The mayor shall institute measures and prescribe such rules and regulations as shall secure the careful erection and inspection of all buildings while in process of construction, alteration, repair or removal and the strict enforcement of the ordinances of the city in reference thereto." It is made the duty of the mayor to enforce this and all other ordinances relating to the erection, construction, alteration, repair, removal or safety of buildings, and in such administration it may be entirely proper to prescribe such rules and regulations as will secure obedience to the ordinance. Section 4 cannot be construed to give the mayor any discretion or power to prescribe rules or regulations beyond the scope of the ordinance, and the ordinance is not rendered void by that section. If the mayor should prescribe rules and regulations outside of or beyond those provided by the ordinance and proper for its enforcement the law would give a remedy to one injuriously affected by the rule or regulation, (*Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9,) but the bill alleged that no mayor had ever instituted or prescribed any rule or regulation for the erection and inspection of buildings. The bill did not show either that the ordinance was void or that any unlawful rule or regulation had been imposed by the mayor.

The ordinance provided that permits should be void unless work under the same was begun within six months of the date of the permit, and if the work was not completed within the time fixed in the permit the permit should be void unless extended by proper authority for good cause shown. The bill did not show that the permit for the main church building, granted ten years ago, was still in force, and if it had been it did not include what the complainant was

attempting to do in the construction of the wing for a gymnasium.

The bill charged that the limit fixed by section 33 of the ordinance upon the height of buildings to be erected was only in force until fire limits should be established, and that such fire limits were established in 1913; that the complainant had complied with the building ordinance; that there were no binding rules or regulations of the city which it had not complied with and that no request had been made for plans and specifications which had not been furnished. Under that state of facts the complainant had a complete and adequate remedy at law by writ of *mandamus* to compel the issuance of the permit. The same rule would apply as in any case of a license or permit where one has complied with the law and the performance of the duty to issue the license or permit is not discretionary. (*People* v. *VanCleave,* 183 Ill. 330; *People* v. *Busse,* 231 id. 251; *Welch* v. *Swasey,* 193 Mass. 364; 18 R. C. L. 215.) The complainant would not be justified in proceeding with the erection of the building without the permit, which the city had power to require and which the mayor had no discretion to refuse if the ordinance was complied with. Equity would not interfere, because of the existence of a complete and adequate remedy at law. The fact that the complainant proceeded without the permit and the interior of the building and the material to be used in construction were exposed to sun and rain and the building seriously damaged furnished no ground for the interposition of a court of equity. If it was a fact that the refusal of a permit was due to the unlawful and malicious action or interference of any person for the purpose of preventing the erection of any church building, the complainant would not be deprived thereby of its remedy by *mandamus* and the fact would afford no ground for the interposition of a court of equity.

The decree is affirmed.                    *Decree affirmed.*