### John Hamilton, Appellee, v. City of Chicago et al., Appellants.

### Gen. No. 27,900.

1. MANDAMUS—*as proper remedy to test right to building permit.* Mandamus to compel the building commissioner to issue a new building permit to complainant to construct a garage on his lot, after an alleged improper revocation of a former permit, is the proper remedy rather than injunction to restrain the city and its officers from interfering with complainant's construction of the garage under the revoked permit, where the original permit was revoked because the building site was located in a residence block and complainant had not secured the consent of owners of property fronting on such block, especially where complainant had done nothing towards the erection of the building prior to the revocation of the permit.

2. ESTOPPEL—*retention of fee for revoked building permit as estoppel to defend revocation.* A city is not estopped to contend that a building permit for the construction of a garage has been validly revoked for failure of the owner to secure necessary frontage consents by the fact that, upon such revocation, it failed to return to the owner the fee which such owner paid when the building permit was originally issued.

3. INJUNCTIONS—*when right to building permit not triable by injunction.* The mere fact that a city building department retained the fee originally paid for a building permit, after revocation of such permit for failure of the owner to procure necessary frontage consents to the construction of the building, does not confer jurisdiction on the court to enjoin the city from preventing the owner from proceeding with the construction of such building under the revoked permit where such owner's remedy is in law by mandamus to compel issuance of a new permit.

Appeal by defendants from the Circuit Court of Cook county; the Hon. IRA J. RYNER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Reversed and remanded with directions. Opinion filed January 2, 1923. *Certiorari* denied by Supreme Court (making opinion final).

SAMUEL A. ETTELSON, for appellants; FRANK W. DERBY and MORTON S. CRESSY, of counsel.

CHURCH, HAFT & ROBERTSON and CLYDE W. DAY, for appellee; CHARLES M. HAFT, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Cook county, entered July 14, 1922, perpetually enjoining the City of Chicago, its Building Commissioner and its Chief of Police, and their agents, deputies and employees, from interfering with the complainant in the erection of a garage upon certain premises at the southeast corner of 68th street and Paxton avenue in said city in accordance with plans approved by the various departments of the City of Chicago, ''so long as said complainant, in the erection of said garage, conforms the erection thereof to said plans and the permit heretofore issued by the Building Commissioner of the City of Chicago to the complainant for the erection thereof, and so long as said complainant conforms the construction of said garage to the structural conditions provided by the ordinances of the City of Chicago, in force at the time of the issu-

ing of the permit aforesaid to the complainant, and so long as the mason work done in and about the erection of said garage is being performed under a contract between the complainant and a licensed mason contractor or employing mason.''

Complainant's bill was filed on November 5, 1919. After defendants' answer and complainant's replication had been filed the cause was referred to a master in chancery to take proofs and report his conclusions of law and fact. A hearing was had before the master and on February 1, 1922, he filed his report, making various findings and recommending that an injunction issue against the defendants as prayed. Defendants' objections to the master's report were ordered to stand as exceptions and after argument the court overruled all exceptions, confirmed the master's report and found that all the material allegations of the bill were true and that the equities were with complainant.

It appears from the evidence that complainant is the owner of a lot or parcel of land at the southwest corner of Paxton avenue and 68th street, having a frontage of 99 feet on Paxton avenue and a depth of 189½ feet on 68th street; that the block in which the land is located is bounded on the north by 68th street, on the east by Crandon avenue, on the south by 69th street and on the west by Paxton avenue; that on July 16, 1919, complainant, without having obtained or attempted to obtain any frontage consents of any of the property owners in the immediate vicinity, made written applications in proper form to the City of Chicago for a permit to erect a one-story garage, practically covering the entire lot, according to certain plans signed and certified to by a licensed architect, and on the same day, the plans being approved, the written permit signed by the Building Commissioner was issued to him, on his paying the then demanded fee of $45, which the city still retains; that it was stated on

the face of the permit that it might be revoked at any time upon a violation of any of the ordinances of the city; that on October 10, 1919, before complainant had done any work towards the erection of the garage, he received a written notification signed by the Building Commissioner that the permit had been canceled and revoked; that complainant did not thereafter take any appeal by way of arbitration or otherwise from the decision of the building department revoking the permit; that on October 22, 1919, complainant started teams to work on said land for the purpose of leveling the same and making the necessary excavations for the proposed building, and on the same day the work was stopped by a police officer under orders from said department; that defendants intend to prevent, by the use of the police force of the city, any attempt on complainant's part to proceed with the erection of the building unless he procures a new permit therefor; and that on November 5, 1919, complainant filed the present bill.

The court found in the decree that at the time of complainant's application for a permit to erect the garage was filed there was, and still is, in force and effect a certain ordinance of the city, passed June 22, 1917, in part as follows:

"It shall be unlawful for any person, firm or corporation to locate, build, construct or maintain any garage in the city on any lot in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, *or within 100 feet of any such street in any such block,* without securing the written consent of a majority of the property owners according to frontage on both sides of the street as provided by the ordinances of the City of Chicago."

And the court further found in the decree that at said times there were in force, and still are in force, certain other ordinances of the city, in part as follows:

"711. (Definition of word 'Block' as used in this

Chapter.) Whenever a provision is made in this chapter that frontage consents shall be obtained for the erection, construction　*　*　*　or maintenance of any building or structure in any block, the word 'block' as used shall not be held to mean a square, but shall be held to embrace only that part of a street bounding the square which lies between the two nearest intersecting streets, one on either side of the point at which such building or structure is to be erected, constructed　*　*　*　or maintained, unless it shall be otherwise specifically provided."

"712. (Frontage Consents—For what required.) It shall be unlawful for any person　*　*　*　to locate, build, construct, or maintain on any lot fronting on any street or alley in the city in any block in which one-half of the buildings on both sides of the street are used exclusively for residence purposes, or within fifty feet of any such street, any building or place used for gas reservoir, packing house, rendering plant, soap factory, tannery, blacksmith shop, foundry, or machine shop or factory combined with a foundry, or laundry to be run by machinery, or livery stable, without the written consent of a majority of the property owners according to frontage on such street or alley. Such written consent shall be obtained and filed with the Commissioner of Buildings before a permit is issued for the construction or alteration of any building or place for any of the above purposes; Provided, that in determining whether one-half of the buildings on both sides of the street are used exclusively for residence purposes any building *fronting upon another street and located upon a corner lot shall not be considered.*"

"437. (Corner Lot Defined—Frontages.) By 'corner lot' is meant a lot situated at the junction of two streets, or of a street and a public alley at least sixteen feet wide, provided that if such alley be less than sixteen feet wide, and the lot be estimated on a line sixteen feet from the opposite side of the alley, such lot may be considered a corner lot. Any portion of the width of such lot distant more than fifty feet

from such junction shall not be regarded as part of a corner lot, but shall be subject to the provisions of this chapter respecting other than corner lots. Where, in corner lots, the two frontages are of unequal length, the lesser street frontage shall be taken as the front of the lot. Street frontage alone, and not alley frontage, shall be considered in determining such lesser frontage.''

''206. (a) Said Commissioner shall have power to stop the construction of any building or the making of any alterations or repairs of any building within said city when the same is being done in a reckless or careless manner, *or in violation of any ordinance,* and to order, in writing or by parol, any and all persons in any way or manner whatever engaged in so constructing, altering or repairing any such building, to stop and desist therefrom.''

It further appears from the evidence that at said time there were no buildings in said block or square (bounded on the north by 68th street, on the west by Paxton avenue and on the south by 69th street) *except* a three-flat apartment building, used exclusively for residence purposes, fronting on 69th street and standing west of the middle north and south line of said block or square; that the west line of said building was about 122 feet east of Paxton avenue and its north line about 69 feet north of 69th street; and that the building was located on the rear portion of either one lot of about 80 feet frontage on Paxton avenue, or of two lots each of the frontage of about 40 feet, or, in other words, was located on the rear portion of the corner lot and of the adjoining lot to the north, or on the rear portion of the corner lot of a width of more than 50 feet.

It further appears from the evidence that at said time there were no buildings upon any of the property fronting east on Paxton avenue, opposite to the block or square in which complainant's lot is situated; that there were no buildings opposite the site of said pro-

posed garage, north of 68th street, nearer than about 149 feet from the north line of 68th street, where there were a series of 29 small private garages, side by side, extending to the north, and on the rear of several lots fronting west on Paxton avenue; that in said block or square, east of Paxton avenue and north of 68th street, there was one residence building fronting east on Crandon avenue, another in the northeast corner of said block, and in the northwest corner of the block and fronting on 67th street there was a row of apartment buildings, used exclusively for residence purposes; that in the block west of Paxton avenue and north of 68th street were several buildings, used exclusively for residence purposes, facing east on Paxton avenue; and that the distance, diagonally between the northwest corner of complainant's lot and the northwest corner of the intersection of Paxton avenue and 68th street, is less than 100 feet.

And the court further found in the decree, in substance, that it was not necessary, under the ordinances of the city, for complainant to have secured the written consent of a majority of the property owners according to frontage on both sides of Paxton avenue in the block in which said proposed garage was to be built, or to secure the written consent of a majority of the property owners according to frontage on both sides of Paxton avenue in said block north of 68th street.

Among the points urged by counsel for defendants for a reversal of the injunctional decree are (1) that complainant, at the time of making application for said permit, did not secure and file the necessary frontage consents for the erection of his proposed garage as required by the city ordinances, and (2) that complainant's remedy, if any he has, is by mandamus to compel the Building Commissioner to issue a new building permit.

As to the first contention, it is strenuously argued

by counsel for defendants, in substance, that (a) because of the provisions of said garage ordinance and the other ordinances above mentioned, and the existence, at the time of complainant's application for said permit, of said apartment building fronting on 69th street, complainant was required to obtain the written consent to the erection of his said garage of a majority of the property owners according to frontage on both sides of Paxton avenue, between 68th and 69th streets, and (b) because of said ordinances, and the existence of said residences in said block west of Paxton avenue and north of 68th street (the distance diagonally between the northwest corner of complainant's lot and the northwest corner of the intersection of Paxton avenue and 68th street being less than 100 feet), complainant was required to obtain such consent of a majority of the property owners according to frontage fronting on Paxton avenue, between 68th and 67th streets. The questions raised are difficult of solution, but, in the view we take of counsel's second point above mentioned, we deem it unnecessary to discuss or to decide them.

Under the facts as disclosed in the present record we are of the opinion that the injunction was erroneously issued, for the reason that complainant's remedy, if any, is at law. Complainant's right, as he claims, to construct said garage can be fully tested by a mandamus proceeding to compel the Building Commissioner to issue a new permit in place of the one which was revoked. (*Pittsburgh, Ft. W. & C. Ry. Co. v. City of Chicago,* 159 Ill. 369, 378; *Grace Missionary Church v. City of Zion,* 300 Ill. 513, 518; *Mutual Elec. Light Co. v. Ashworth,* 118 Cal. 1, 6; *Pacific States Supply Co. v. City of San Francisco,* 171 Fed. 727, 735.) The garage ordinance in question has been declared to be a valid one. (*People v. Ericsson,* 263 Ill. 368.) Counsel for complainant in their printed brief and argument here filed admit that where a building

permit has been wrongfully *refused* in the first instance the remedy is by mandamus, but contend that where an issued permit has been wrongfully *revoked,* injunction is the proper remedy. We think that the remedy is by mandamus in either case, especially where, as here, it appears that the party to whom the permit was issued did nothing towards the erection of the building prior to the time of the revoking of the permit. The doctrine of estoppel *in pais* should not be applied. (*Wise v. City of Chicago,* 183 Ill. App. 215, 220; *J. Burton Co. v. City of Chicago,* 236 Ill. 383, 390; *Meltzer v. City of Chicago,* 152 Ill. App. 334, 343.) The mere fact that the city, or its building department, has failed to return the fee of $45, which complainant paid when the permit was originally issued, does not estop the city to contend that there has been a valid revocation of the permit, and does not confer jurisdiction upon a court of equity to grant an injunction which otherwise it would not have.

For the reasons indicated the decree of the circuit court is reversed and the cause is remanded to that court with instructions to dismiss complainant's bill for want of equity.

*Reversed and remanded with directions.*

BARNES, P. J., and MORRILL, J., concur.