## D. Gottlieb and Company, Appellee, v. City of Chicago et al., Appellants.

### Gen. No. 45,188.

Opinion filed October 25, 1950. Released for publication March 21, 1951.

JOHN J. MORTIMER, Acting Corporation Counsel of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, of counsel.

ARVEY, HODES & MANTYNBAND, of Chicago, for appellee; LOUIS M. MANTYNBAND, IRWIN I. ZATZ and J. HERZL SEGAL, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Upon plaintiff's motion for an injunction *pendente lite* as prayed in its verified complaint as amended and

supplemented, the following order was entered by the trial court:

"1. That the defendants . . . and their successors in office and their servants, agents, and attorneys, and all police officers of the City of Chicago be and each of them hereby is enjoined and restrained from seizing, confiscating, destroying or otherwise interfering with the operation, keeping, or use of the Bowlette machine manufactured by D. Gottlieb & Co., plaintiff herein, *in any place of public resort in the City of Chicago,* until the further order of this court; and

"2. That the People's Writ of Injunction issue, restraining said defendants as above set forth in paragraph numbered 1 herein for good cause shown that said injunction issue forthwith without the necessity of filing a plaintiff bond."

Defendants filed an interlocutory appeal from that order.

The complaint alleges that plaintiff is a corporation engaged in business in Chicago, Cook County, Illinois, *as a manufacturer and distributor of an automatic amusement machine known as "Bowlette";* that defendant City of Chicago is a municipal corporation, defendant Kennelly is Mayor of said City, defendant Prendergast is the Commissioner of Police of said City, defendant William T. Prendergast is the City Collector of said City and is in charge of processing applications for licenses, and defendant Schreiber is the City Clerk of said City and is in charge of licenses and in particular, under Section 104–5 of the Municipal Code of Chicago, of issuing licenses for automatic amusement machines; that plaintiff's amusement machine is constructed for use as a miniature shuffleboard and bowling game (here follows a description of the machine and the manner in which it is played); that said machine is neither a clock, tape machine, slot machine, or other machine or device for the reception of

money or chance, or upon the action of which money is staked, hazarded, paid, won or lost, nor is it a bagatelle or pigeonhole game, as defined in Section 193–26 of the Municipal Code of Chicago; that said Collector wrongfully refuses to issue licenses for the aforesaid machines, stating that said machines could not be licensed because they were "bagatelles," in violation of Section 193–26 of the Municipal Code of Chicago, and "slot machines," in violation of the Criminal Code of the State of Illinois and Section 191–5 of the Municipal Code of Chicago; that it would be futile to make application for licenses for Bowlette machines with said Collector; that plaintiff has sold a large number of said Bowlette machines for distribution in places of public resort, for the amusement of the public, and many of said machines have been so distributed and placed in places of public resort for the amusement of the public; that defendants have threatened to arrest the proprietors of the places where said machines are located for violating Section 104–5 of the Municipal Code of Chicage, which provides: "It shall be unlawful for any person to install, keep, maintain or use, or permit the installation, keeping, maintenance or use upon his premises of any automatic amusement machine upon which such tax has not been paid and for which a license has not been issued for the current year"; that defendants have further threatened and now threaten to seize and destroy, pursuant to Section 193–26 of the Municipal Code of Chicago, which provides for the seizure and destruction of "bagatelles" and "pigeonholes," the aforesaid Bowlette machines and such other Bowlette machines as may be installed in any place of public resort; that on March 22, 1950, a Bowlette machine was seized, confiscated and removed from its location in Frank's Tavern, West North avenue, Chicago, by a police officer of said City, agent of certain defendants, and taken into custody; that the police

526

officer who seized said machine stated that it was a pinball machine in violation of the "bagatelle" ordinance; that the seizure and destruction of the aforesaid machines by defendants and their agents or employees, and the arrest of the proprietors of the places of public resort where the machines are placed, will cause irreparable injury and damage to plaintiff; that plaintiff has a considerable capital investment, owns its building and machinery, which are substantial in nature, and employs approximately 400 persons; that since March 1, 1950, plaintiff has been producing approximately 125 Bowlette machines per day; that interference with the operation of said machines by defendants and confiscation of said machines when on location result in great damage to plaintiff, in that such action has disrupted plaintiff's markets and sales, causing plaintiff to face grave financial losses; that plaintiff has no adequate remedy at law to redress the loss complained of.

Plaintiff prays: That a mandatory injunction issue, compelling and requiring defendants *to accept proper applications for licenses for the Bowlette machines, and upon tender of the license tax, to issue licenses to the qualified applicants for the aforesaid Bowlette machines;* that defendants and police officers acting for and on behalf of said City, and each of them, be restrained and enjoined from seizing, confiscating, destroying, or otherwise interfering with the operation, keeping, or use, *in any place of public resort within the City of Chicago,* of any of the aforesaid Bowlette machines; "that pending the determination of this action this court issue an injunction, pendente lite, prior to answer, restraining and enjoining the said defendants, their agents, servants and employees, from seizing, confiscating, destroying, or otherwise interfering with the operation, keeping or use, in any place of public resort within the City of Chicago, of any of the afore-

said Bowlette machines until the further order of this court.'' The temporary injunctional order entered followed, in substance, the prayer of the complaint.

During the hearing of the motion of plaintiff, it filed an amendment and supplement to the complaint which alleges that on March 28, 1950, it applied for a license for a Bowlette at the office of the City Collector and tendered $25 in payment of the fee, but was refused a license on the ground that the Bowlette was a bagatelle or pigeonhole device.

██ Defendants have filed and argued a number of points in support of their contention that the temporary injunctional order entered should be reversed, but in our view of this appeal we need only consider point I, viz., that ''in cases involving a license, our courts have held that the availability of mandamus will bar a suit for injunction''; that ''the chancellor erred in granting the temporary injunction because the plaintiff had an adequate remedy at law''—mandamus. Defendants state: ''We submit that for the purposes of this appeal the legality or illegality of the Bowlette is not in issue. Our case is based on the main premise that equity does not have jurisdiction over the subject matter of the instant case and the legality of the Bowlette is not in issue.'' After a careful consideration of point I we have reached the conclusion that the point is a meritorious one.

In *Film Classics of Illinois v. Dever*, 234 Ill. App. 614, cited by defendants in support of their position, the First Division of this court had before it a case where an interlocutory injunction was entered restraining the mayor and chief of police of the City of Chicago from interfering with the exhibition and distribution of a motion picture film. The bill alleged that the complainants were owners of a motion picture entitled ''Three Women,'' and that they had entered into a contract for the exhibition of the picture in certain

theaters in Chicago; that they tried to get a permit to exhibit said film, in conformity with an ordinance of the City, but that they were refused a permit, and that serious financial injury and irreparable damage would accrue to them if the injunction was not granted. The City filed a demurrer that questioned the jurisdiction of the chancery court in the proceeding; the demurrer was overruled and the interlocutory injunction prayed for was granted. The Appellate court, in an opinion written by MR. JUSTICE McSURELY, states (pp. 616, 617):

 "It is the established rule in this State that when the remedy of mandamus is available a court of equity has no jurisdiction and that allegations of irreparable injury and hardship do not in any wise change this rule. Among the cases holding that mandamus is the proper remedy in a case like this are *Grace Missionary Church v. City of Zion,* 300 Ill. 513; *Hamilton v. City of Chicago,* 227 Ill. App. 291; *Pittsburg, Ft. W. & C. Ry. Co. v. Chicago,* 159 Ill. 369; *Klinesmith v. Harrison,* 18 Ill. App. 467; *City of Chicago v. O'Hare,* 124 Ill. App. 290; *Chicago, D. & V. R. Co. v. St. Anne,* 101 Ill. 151; *Vitagraph Co. of America v. City of Chicago,* 209 Ill. App. 591.

 "It is conceded that the exhibition of motion pictures is subject to police regulation and that the ordinance requiring a permit is valid. Complainants cannot nullify the ordinance by a chancery proceeding seeking to prevent the officers from enforcing it. If the administrative officers do not properly exercise their functions under the ordinance, the remedy is by mandamus.

 "Complainants stress the large amount of money invested in the picture and the injury they will suffer if the City refuses a permit. A similar plea was made in *Grace Missionary Church v. City of Zion,* 300 Ill. 513, where the court specifically holds that the fact

529

that the withholding of the permit might result in serious damages furnishes no ground for the interposition of a court of equity.''

Defendants also cite *Rockford Amusement Co. v. Baldwin,* 252 Ill. App. 1, where an injunction was entered in the trial court restraining the sheriff and board of supervisors of Winnebago county from interfering with the complainant's business of conducting a dance hall and road house. It appeared that the complainant had secured a judgment awarding a writ of mandamus directing the board of supervisors to issue a license to maintain the dance hall and road house. An appeal was taken in the mandamus case and during the pendency of the appeal the injunction in question was secured. The right to the injunction was based upon a claim of irreparable injury resulting from a loss of anticipated income from the operation of the business pending the appeal in the mandamus proceeding. The Appellate court dissolved the injunction and held that a court of equity had no power to order the injunction because the complainant had an adequate remedy at law. The court stated in its opinion (p. 4):

''. . . Equity will not interfere because of the existence of a complete and adequate remedy at law. The fact that appellee may suffer losses from anticipated profits or that the refusal of a license was due to arbitrary and wrongful action of the county board will afford no ground for the interposition of a court of equity. (*Grace Missionary Church v. City of Zion,* 300 Ill. 513; *Film Classics of Illinois v. Dever,* 234 Ill. App. 614.) Injunction and mandamus are not correlative remedies in the sense of being applicable to the same subject matter. (*Film Classics of Illinois v. Dever, supra; Fletcher v. Tuttle,* 151 Ill. 41.)

''Inasmuch as appellee had not obtained a license from the county board to operate and maintain a

dance hall, its operation without a license would be unlawful, and the effect of an injunction would be to permit appellee to operate its dance hall in violation of the law. A court of equity has no such power. (*City of Chicago v. O'Hare,* 124 Ill. App. 290.) The provisions of the statute cannot be nullified by a chancery proceeding seeking to prevent the officers from enforcing it. If the administrative officers do not properly exercise their functions under the law, the remedy is by mandamus. (*Film Classics of Illinois v. Dever, supra.*)

"A somewhat similar situation arose in *Vitagraph Co. of America v. City of Chicago,* 209 Ill. App. 591, and it was there held that a bill for injunction presented no cause for equitable relief."

Defendants also cite *Vitagraph Co. of America v. City of Chicago et al.,* 209 Ill. App. 591, referred to in the foregoing case. There it appeared that the complainant filed a bill to restrain the City from interfering with the showing of a movie film during the time that the City's appeal from a judgment granting a writ of mandamus to compel the issuance of a license to exhibit the movie film was pending. The Appellate court held that the appeal from the mandamus judgment operated as a supersedeas and that the injunction should not have issued. The court said (p. 594):

█ "We think the fundamental error in the theory of the bill is that the refusal of the license or permit deprived complainant of a personal or property right. The business is conceded to be one subject to police regulation. In such a case 'the refusal to license deprives no man of any personal or property right, but merely deprives him of a privilege which it is within the discretion of the municipal authorities to grant or withhold.' (*People v. Cregier,* 138 Ill. 401, 419.) Whether the discretion in that regard was abused was apparently the question in the mandamus proceeding.

The delay incident to its final adjudication does not, however, disturb any property or personal right of appellee. The case does not come within that class referred to in appellee's brief where an injunction will issue to preserve existing conditions as to property rights theretofore asserted or enjoyed, during the pendency of litigation with respect thereto. This is not a proceeding to prevent the city or its officers from taking any affirmative or unauthorized or wrongful action to deprive appellee of a right it had previously asserted or enjoyed. On the contrary, it is one having the effect of conferring upon appellee the exercise of a privilege to which it is not entitled without an official permit. *Whether the permit is wrongfully withheld is the subject of a pending proceeding at law* [mandamus] *entirely adequate to determine appellee's right thereto. We do not think the bill presents a case for equitable relief.''* (Italics ours.)

Defendants also cite *Litzelman v. Town of Fox*, 285 Ill. App. 7, where the court states (pp. 11, 12):

██ "It is a general well established and recognized rule in this State that the jurisdiction of a court of equity pertains only to the maintenance of civil, personal and property rights and that it has no jurisdiction over matters or questions of a political nature unless civil property rights are involved. *Spies v. Byers*, 287 Ill. 627; *Payne v. Emmerson*, 290 Ill. 490; *People v. McWeeney*, 259 Ill. 161. Unless a party is injured in his property rights, he cannot by writ of injunction determine the validity of an election or contest the acts of public officers in the discharge of their duties. Any order entered by a circuit court upon such questions is void for want of jurisdiction over the subject matter. *People v. Rose*, 211 Ill. 252.

". . .

"The allegation in the amended complaint that a part of the plaintiffs owned taverns in said township

532

where alcoholic liquors and beer were kept for sale and that if the officers were permitted to enforce the result of the election, they would be damaged, is not an allegation in reference to a property or civil right. Before they could lawfully conduct such business in their taverns, it was necessary for them to comply with the provisions of the Dram Shop Act and acquire a license. The right to such a license is not a civil right.''

Plaintiff, in answer to the foregoing cases, argues that the decision in *Moroney v. Allman,* 271 Ill. App. 336, ''may well be regarded as nullifying the prior decisions or at least restricting them to the precise facts therein involved.'' It will be noted that the *Moroney* case was decided by the same Division of this court that decided *Film Classics of Illinois v. Dever, supra.* In the *Dever* case, as we have heretofore stated, the court said (p. 616) that ''it is the *established rule in this State* that when the remedy of mandamus is available a court of equity has no jurisdiction and that allegations of irreparable injury and hardship do not in any wise change this rule,'' and in view of that ruling it seems clear that if the First Division in the *Moroney* case intended to change or modify the rule in the *Dever* case it would have stated that intention in plain and unmistakable language. In the *Moroney* case the complainant was conducting a restaurant and public place of amusement in the City of Chicago *under a license issued by the City of Chicago.* He had an investment of approximately $50,000 in his business. When his license expired he applied for a *renewal of his license* and upon refusal of the renewal license he very properly filed a petition for a writ of mandamus, and in a hearing upon the merits judgment was entered *awarding him the writ.* Thereupon the City prosecuted an appeal. Pending the appeal the City arbitrarily and inequitably threatened to close Moroney's business and destroy his investment. To prevent such conduct

by the City an injunction issued restraining the City from closing Moroney's business and destroying his investment *until the mandamus action was disposed of in the Appellate court.* In the *Moroney* case the court states (p. 340): "In the instant case there is no contention that the ordinance requiring a license was invalid. A license had been obtained by complainant, as the ordinance provided, and he was seeking its renewal. Upon refusal of defendants to renew his license he filed a petition for a writ of mandamus, which was heard on its merits and the writ awarded, but the city appealed." The opinion further states (p. 351):

██ "From the foregoing authorities we are of opinion that where parties are at litigation in an action at law, a court of equity may, in a proper case, issue an injunction to restrain one of the parties from practically destroying the substance of the action until the action is disposed of.

"So, in the instant case, it appearing from the allegations of the bill which, on this record are admitted to be true, that complainant is seeking a renewal of his license; that he has complied with all the law and ordinances; that he is conducting his business properly; that upon refusal of the license by the city officials he filed a petition for a writ of mandamus, and upon a hearing of the merits of that case judgment was entered awarding him the writ from which the city prosecutes an appeal, and pending the disposition of the appeal threatened to forcibly close up complainant's business, it is obvious that he has no adequate remedy at law because if his business is closed up it will be substantially destroyed; *in such case equity will intervene to enjoin the officials until the determination of the mandamus proceeding.*" (Italics ours.)

In the *Moroney* case the Appellate court recognized that Moroney had first resorted to the proper remedy to obtain a renewal of his license when he filed the

534

mandamus action and that he had in that action proven his right to a renewal of his license, and that in such a situation equity had the right to maintain the *status quo* to prevent the destruction of Moroney's business *until the determination of the mandamus proceeding in the Appellate court.* In the *Moroney* case the complainant did not attempt to use equity *in lieu of mandamus,* and he asked the aid of equity solely in support of his mandamus judgment until the Appellate court determined the appeal of the City. No such situation is present in the instant case. Here the plaintiff seeks to avoid mandamus. After a careful study of the *Moroney* case we are satisfied that the First Division did not intend in that case to change or modify the established rule.

Plaintiff also cites *Rosehill Cemetery Co. v. City of Chicago,* 352 Ill. 11, as a case that supports the instant injunctional order. A careful examination of that case satisfies us that it does not support plaintiff's position. There it appeared that the plaintiff applied for a building permit to construct a cemetery building on its premises, that it had complied with all of the requirements of the ordinance of the City relating to buildings, and, as stated in the opinion of the Supreme court, ''the permit for the erection of the building was refused *without legal justification.*'' The plaintiff's bill not only sought to prevent the City and its officers and agents from interfering with the construction of the building, but it sought to prevent the City from interfering with the plaintiff's use of the premises in question as a cemetery. The North Town Improvement Association was given leave to file an intervening petition in the suit, which prayed that the plaintiff *be enjoined and restrained from using its premises as a burial place and that it be ordered to remove any bodies there buried.* There was also involved in the proceeding the determination of the validity of various

acts of the legislature, ordinances of the town of Lake View and of the city of Lake View, and also the interpretation of the charter of the Rosehill Cemetery Company. While the main point urged by the defendants in the Supreme court was that the Rosehill Cemetery Company had no right to establish a cemetery on the tract in question, it also argued that it was error to grant an injunction to restrain the City and its officers and agents from interfering with the erection of a building on the 25-acre tract when plaintiff had not obtained a permit to erect the building as required by ordinance; *that plaintiff's remedy was by mandamus to compel the issuance of the permit.* That the Supreme court recognized that the defendants' last contention raised an important point clearly appears, for the court in its opinion states certain reasons why the rule invoked by the defendants should not be enforced in that case. To quote from the opinion (pp. 33, 34):

 ". . . Appellants [defendants] in their brief state that *the main point of this litigation is to test appellee's right to establish a cemetery on the 25-acre tract.* It was stipulated that appellee made proper application for a permit to erect the building, that the plans for the building complied with all the provisions of the building code of the city of Chicago, and that the permit was refused *on the sole ground that appellee had no right to use the tract for cemetery purposes.* As we have shown, appellee did have the right to use this tract for cemetery purposes, *and it follows that there was no legal justification for the refusal of the building permit.* Its issuance *under the facts of this case* is a mere matter of form. Where a court of equity has obtained jurisdiction for any purpose, it is empowered to determine all questions involved in the case and do complete justice. (*King v. King,* 215 Ill. 100.) It is the aim of equity to administer complete relief in one suit although to do so requires

536

an investigation of several matters and relief consisting of different elements. The chancellor should in a single suit investigate and determine all questions *incidental* to the determination of the main controversy and will grant all relief *incidental* to the accomplishment of the main object of the bill. (*King v. Rice,* 285 Ill. 123; *Anderson v. Anderson,* 293 id. 565.) The main object of appellee's bill was to prevent the city and its officers and agents from interfering with its use of the 25 acres as a cemetery. *To prevent their interference with the erection of the building was incidental to the main relief sought."* (Italics ours.)

The Supreme court held that *under the circumstances of the case* it was not error for the chancellor to issue the injunction against interference with the erection of the building.

The *Rosehill Cemetery Co.* case is certainly not a decision in support of plaintiff's contention, and we think that, inferentially, at least, it tends to support defendants' position. In the instant case there is only one issue—the question of a license—and as to that issue plaintiff has an adequate remedy by mandamus. Plaintiff cites several other cases in support of its contention that the injunctional order was warranted, but these cases, in our judgment, are not applicable to the facts of the instant proceeding.

The principal defendant, City of Chicago, states its position in this proceeding so clearly that we are impelled to quote the statement verbatim: "The *status quo* of the plaintiff at the time of the filing of the instant suit was that of 'manufacturer and distributor of automatic amusement machines and in particular an automatic amusement machine known as "Bowlette," ' with which business the defendants were not concerned. The plaintiff could manufacture and distribute or sell its machines without restriction either in the City of Chicago or any place else. The defendants had no in-

terest in these activities of the plaintiff and were not doing anything to hamper same. The defendant's only interest in the matter was to prevent unlicensed automatic amusement devices from being operated in places of public resort within the City of Chicago. The plaintiff applied for a license for one Bowlette, after the suit was filed, which was refused. The only remedy for the obtaining of a license was *mandamus,* but this suit was filed instead and the chancellor entered the temporary injunction which restrained the defendants from seizing, confiscating, destroying, or otherwise interfering with the operation, keeping or use, in any place of public resort within the City of Chicago, of such Bowlettes. Thus, the *status quo* of the plaintiff was changed from that of manufacturer and distributor of automatic amusement machines generally to that of the owner of a machine it could place, sell, distribute, etc. in any place of public resort within the City of Chicago *without a license and anyone who bought the Bowlette from the plaintiff was accorded the same immunity.* The *status quo* of the defendants was changed from the power to enforce the ordinance prohibiting unlicensed machines to that of sitting helplessly by while the City of Chicago was flooded with these unlicensed devices. In the meantime, the places of public resort within the City of Chicago where the Bowlettes are placed are receiving the benefit of the temporary injunction without the payment of any money to the City of Chicago.''

It seems reasonably clear to us that the old established rule in this State, that when the remedy of mandamus is available a court of equity has no jurisdiction, would be practically nullified by an affirmance of the blanket injunctional judgment in this case, and that hereafter any person who has been refused a license would avoid mandamus and resort to equity.

538

■ The chancellor, in our judgment, erred in entering the temporary injunctional order in question, and it is therefore reversed.

*Temporary injunctional order reversed.*

SCHWARTZ, P. J., and FRIEND, J., concur.